CONSOLIDATED PAPERS, INC., Plaintiff-Appellant, v. DE-
PARTMENT OF INDUSTRY, LABOR & HUMAN RELA-
TIONS, and others, Defendants-Respondents.

*No. 75–85. Argued January 31, 1977.—Decided March 1, 1977.*
(Also reported in 251 N. W. 2d 69.)

For the appellant there were briefs by *Robert H. Joyce, Seyfarth, Shaw, Fairweather & Geraldson,* of Chicago, Illinois; and *Phillip G. Meyers* of Wisconsin Rapids, and oral argument by *Robert H. Joyce.*

For the respondents the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J.    Two issues are presented on appeal:

1. Should this court discard the "any credible evidence" test for judicial review of findings of the Department of ILHR?

2. Is there any credible evidence to support the finding of the Department of ILHR that the deceased's death was caused by an occupational disease arising out of his employment?

*Standard of Judicial Review*

This court has consistently held that in reviewing findings of the Department of ILHR, the test is whether there is any credible evidence in the record sufficient to support the findings made by the department. *Swiss Colony, Inc. v. ILHR Department,* 72 Wis.2d 46, 56, 240 N.W.2d 128, 133 (1976); *Vande Zande v. ILHR Department,* 70 Wis.2d 1086, 1093, 236 N.W.2d 255, 259 (1975); *R. T. Madden, Inc. v. ILHR Department,* 43 Wis.2d 528, 547, 169 N.W.2d 73, 82 (1969). The appellant employer now asks the court to discard this test, and adopt a rule whereby the court could set aside a finding of the department if the evidence, viewed in a light most favorable

to the finding, is so overwhelmingly against the finding that such a finding could never stand. The substance of this test is more accurately stated by the employer where it urges that this court hold the department's finding in this case against the great weight of the evidence.

The appellant's contention is without merit. First, it is argued that under the present test the department examiner is allowed non-reviewable authority to determine the outcome of a workmen's compensation matter. This contention is not correct, for under the "any credible evidence" test, the record must contain evidence supporting the finding which is relevant, evidentiary in nature, not a conclusion of law, and not so completely discredited by other evidence that a court could find it incredible as a matter of law. *R. T. Madden, Inc. v. ILHR Department, supra* at 547, 169 N.W.2d at 82. Further, in *R. T. Madden, Inc.,* this court stated:

"The court . . . does have the duty to weigh the evidence relied upon by the department to determine whether that evidence is sufficient to justify the finding made. If there is credible, relevant, and probative evidence and that evidence construed most favorably would justify men of ordinary reason and fairness to make that finding, the evidence is sufficient. A finding should rest upon such evidence and not upon a mere scintilla of evidence or upon conjecture and speculation." 43 Wis.2d at 548, 169 N.W.2d at 82.

Secondly, the employer argues for this change in the scope of review in order to establish uniformity and judicial soundness. No lack of uniformity or judicial soundness has been demonstrated or is apparent.

In *Squires v. Industrial Comm.,* 248 Wis. 189, 21 N.W. 2d 264 (1946) this court specifically rejected the appellant's argument that the test to be applied upon judicial review of a commission finding should be extended such that a finding which is not supported by the preponder-

ance of the credible evidence should be overturned. Furthermore, the court has many times stated that the findings of the department must be upheld upon appeal even though they may be contrary to the great weight and clear preponderance of the evidence. *R. T. Madden, Inc. v. ILHR Department, supra* at 548, 169 N.W.2d at 82; *Briggs & Stratton Corp. v. ILHR Department,* 43 Wis.2d 398, 404, 168 N.W.2d 817, 820 (1969).

The test for review of department findings is not purely a judicial creation, but since the enactment of the Workmen's Compensation Act, this court has held that the legislature compels the employment of this test by the statutory section of the act, presently sec. 102.23, Stats., regarding judicial review. Sec. 102.23 (1) (intro.) states, "[t]he findings of fact made by the commission acting within its powers shall in the absence of fraud, be conclusive," and sec. 102.23 (1) (d) places a limitation upon judicial review as follows:

"(d) Upon such a hearing, the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:
"1. That the commission acted without or in excess of its powers.
"2. That the order or award was procured by fraud.
"3. That the findings of fact by the commission do not support the order or award."

These statutory statements require the confirmation of findings if there is any credible evidence to support them and also that the court may not in its review weigh the evidence or set aside a finding on the ground that it is against the great weight or preponderance of the evidence. *R. T. Madden, Inc. v. ILHR Department, supra* at 548, 169 N.W.2d at 82; *Fitzgerald v. Globe-Union, Inc.,* 35 Wis.2d 332, 336–37, 151 N.W.2d 136, 139 (1967); *Booth Fisheries Co. v. Industrial Comm.,* 185 Wis. 127, 200 N.W. 775 (1924), *aff'd.,* 271 U.S. 208 (1926).

The legislature's purpose in limiting the scope of judicial review in workmen's compensation cases is to limit appeals and protracted litigation, in the interest of speedy justice for the workingman. *R. T. Madden, Inc. v. ILHR Department, supra* at 536, 169 N.W.2d at 76, quoting the concurring opinion in *McCarthy v. Sawyer Goodman Co.,* 194 Wis. 198, 205, 215 N.W. 824, 826 (1927); *Milwaukee v. Industrial Comm.,* 160 Wis. 238, 243–44, 151 N.W. 247, 248 (1915). Just as an employer, who avails himself of the rates of compensation under the Workmen's Compensation Act must accept the abolishment of the defenses of assumption of risk and the negligence of a fellow-servant, so must that employer accept this limited scope of judicial review. *Booth Fisheries Co. v. Industrial Comm., supra* at 133–34, 200 N.W. at 777.

*Credible Evidence*

The appellant challenges the sufficiency of the record as to the finding by the department that the death of Ralph Cotter was caused by an occupational disease arising out of his employment. This finding is a true finding of fact, *Mrs. Drenk's Foods, Inc. v. Industrial Comm.,* 8 Wis.2d 192, 196, 99 N.W.2d 172, 175 (1959), and thus is conclusive upon the court if supported by any credible evidence. We think this finding is amply supported by the record.

It is undisputed that the defendant first began working for the company in 1936 and for twenty years worked in a wood room where wooden logs were converted to chips. In the wood room were conveyors and inspection stations for screening and sorting logs for debarking before they were put into the chipping machine. In 1956 the decedent was transferred to the crane department and later to the yard department, and in 1970 he became a watchman. While on the company's premises, the de-

cedent was exposed to airborne wood dust, *Alternaria* spore and other types of fungi. In 1965, the decedent first began to notice a progressive and increasing difficulty in breathing.

Admitted into evidence, in lieu of testimony, was a report of Dr. Jordan N. Fink. This report, prepared sixteen days after the decedent's death on March 15, 1972, states Dr. Fink examined him between October 28, 1971 and February 22, 1972. The report concludes with the diagnosis of the decedent's disease as "Hypersensitivity pneumonitis due to Alternaria (and possibly other fungi) contaminating his work area." This report also contains a statement that "[a] report from a State of Wisconsin survey of his work area indicated large amounts of alternaria tenuis in the wood. . . ," and notes that the decedent had experienced an accentuation of his breathing difficulty during and after passing through the wood room at work.

An autopsy report, prepared by pathologist Dr. James W. Erchul and also in the record, defines the decedent's cause of death to be "Chronic Pneumonitis and Interstitial Fibrosis of the Lungs Possibly Due to Alternaria Hypersensitivity."

Dr. Donald P. Schlueter testified that he examined the deceased while he was under the treatment of Dr. Fink and that he diagnosed the decedent's disease and cause of death as hypersensitivity pneumonitis, caused by exposure to *Alternaria,* which occurred at the place of employment. The record contains a published medical article, co-authored by Dr. Schlueter and Dr. Fink, which considers the disease hypersensitivity pneumonitis caused by *Alternaria* and relates the decedent's case history. It is further shown by Dr. Schlueter's testimony that while the decedent was under treatment, a challenge inhalation test was administered to him using *Alternaria* extract, and that this test produced a positive reaction to the

spore. Such a reaction, although not conclusive, is suggestive of hypersensitivity to the antigen.

Further evidence showed that another man who also worked in the appellant's wood room from 1951 to 1957 was inflicted with a disease which was similarly diagnosed to be hypersensitivity pneumonitis caused by *Alternaria* and possibly other fungi.

This evidence amply supports the department's finding, but the appellant contends it is not credible and therefore is insufficient.

The appellant's primary contention is that the evidence which supports a conclusion that the decedent's death was caused by exposure to *Alternaria* spore at the paper mill is so completely discredited by other evidence as to be incredible as a matter of law. To consider this contention it is necessary to review the evidence offered by the company. It presented a study of the atmosphere at the paper mill conducted by the Institute of Paper Chemistry on four occasions over a period of one year beginning in November of 1972 and ending in August of 1973. The study concluded that there was no abnormally high *Alternaria* spore count at the mill, including in the wood room, and that there was no significant quantity difference between the level of *Alternaria* spore at the paper mill and the level at the other locations used for comparison, the Institute and outside the Appleton courthouse. It is undisputed that *Alternaria* is a fungus commonly found in the general environment.

Roger Brandt, safety director at appellant's paper mill testified that there had been no alteration in the methods of operation at the plant since the year 1965.

The chief witness for the appellant was Dr. Dean Emanuel, who testified to various matters relating to the possibility of hypersensitivity pneumonitis due to *Alternaria*. Dr. Emanuel testified at one point that it was

his opinion that the cause of the decedent's death was not related to *Alternaria* hypersensitivity. Dr. Emanuel based his opinion upon the Institute's study of the air at the mill, his examination of the decedent's medical reports, and further upon the recognized size of the *Alternaria* spore, which he stated was too large to permit the spore to penetrate the more distal portions of the lungs where pneumonitis typically is most prevalent. It was Dr. Emanuel's theory that it is necessary for the particle to be in these areas in order to cause the disease there. Dr. Emanuel's final opinion was that the decedent did suffer from chronic pneumonitis and interstitial fibrosis due to some unknown cause, but that in any event this condition was not casually related to the environment at the appellant's paper mill. He also stated, however:

"I would have to agree with the autopsy report that this was a chronic pneumonitis and interstitial fibrosis of the lungs, possibly due to alternaria hypersensitivity and I would emphasize possibly because I think it's speculative from that standpoint."

It is obvious that the expert opinion of Dr. Emanuel cannot render the opinions of Dr. Schlueter and Dr. Fink inherently incredible. Dr. Schlueter testified that his opinion was not affected by the study of the Institute, because of the limited time period during which it was conducted. As to the question of the *Alternaria* spore being too large to penetrate the distal portions of the lung, Dr. Schlueter testified that medical science has not yet determined that an antigen particle must get into a particular portion of the lung in order to cause the reaction, and thus, the size of the spore did not alter his opinion.

The rule is well settled that where disputed medical opinions are elicited, there exists only a question of credi-

bility, upon which the finding of the department, the sole judge of the weight and credibility of testimony, is conclusive. *Employers Mutual Liability Insurance Co. v. ILHR Department*, 62 Wis.2d 327, 214 N.W.2d 587, 589 (1974).

Thus, the only question which remains as to this contention is whether the atmospheric study, while detecting no greater concentration of *Alternaria* spore at the mill than at other testing sites in the general environment, renders the evidence supporting the contested finding inherently incredible. We think the answer is negative for several reasons. In the first place, the results of a scientific study are not conclusive, as appellant appears to contend, even if they are not contested. Appellant refers to the results of the study as irrefutably established physical evidence and states that the court must thus hold Dr. Schlueter's testimony incredible. The results of a scientific study, however, are not in the category of physical evidence, such as those involved in the cases cited by appellant. For example, in *Whitefish Bay v. Hardtke*, 40 Wis.2d 150, 161 N.W.2d 259 (1968), the evidence involved was not in the nature of the results of a scientific test, but was uncontested evidence that the defendant's car left skid marks 166 feet long. Such physical evidence in that case, the court held, could render the defendant's testimony incredible that he was not driving too fast for conditions. Similarly, in *Corning v. Dec Aviation Corp.*, 50 Wis.2d 441, 184 N.W.2d 152 (1971), an action involving a collision of two airplanes while on the ground, it was irrefutably established that the brake system of defendant's airplane had no brake fluid and this caused the accident. The court held this physical evidence rendered incredible the testimony of the defendant's employee that he had, only a few minutes before the accident, inspected the airplane's brake system and found the fluid reservoir full of fluid and no leak

in the system. The results of a scientific study are not in the nature of this sort of physical evidence. It is also not in the category of measurements and distances offered through the testimony of disinterested and unimpeached witnesses, evidence which may be binding on the trier of fact. *See Capitol Sand & Gravel Co. v. Waffenschmidt,* 71 Wis.2d 227, 233–34, 237 N.W.2d 745, 749 (1976).

As this court has held blood tests offered into evidence to prove intoxication not conclusive but merely elements of proof to be weighed by the trier of fact, *Baird v. Cornelius,* 12 Wis.2d 284, 293, 107 N.W.2d 278 (1961), such is also the general rule as to evidence in the form of the results of scientific experiments or tests. Richardson, *Modern Scientific Evidence* sec. 5, 7 (1961); 32 C.J.S. *Evidence* sec. 592 (1964); 30 Am. Jur.2d *Evidence* sec. 1104 (1967). Thus, as to the results of such experiments, the fact finder is the sole judge of the credibility to be attached thereto. Therefore, the results of this atmospheric study, although admittedly believable, could have been rejected on the basis of credibility by the triers of fact, the examiner and department.

There are also several reasons why the study, although not rejected, may not have had enough weight attached to it by the finder of fact to overcome the medical opinions of Dr. Schlueter and Dr. Fink. Dr. Schlueter testified that although he recognized the results of the study, it did not affect his opinion. The test was not conducted in the time period during which the decedent worked at the mill. In fact, the study began eight months after his death. Usually an occupational disease is acquired over a long period of years, and in this case the decedent had worked at the mill for thirty-five years. The testimony that conditions at the mill had not changed during the eight years before the study does not significantly mitigate this fact of the timing of the study, because first, eight years does not go back beyond November,

1964, and the decedent had already showed symptoms of this respiratory disease in 1965; and second, the statement that conditions have not changed is not direct evidence that the air composition had not changed. There is also evidence which permits an inference disputing the study's reliability as to the period in which the decedent worked at the mill. The record shows the decedent and another similarly afflicted worker experienced accentuation of their respiratory problems during and after they passed through the wood room. Dr. Fink's report refers to a state study showing high *Alternaria* levels at the place of employment, and the medical article also reports high dust levels and the presence of *Alternaria* as well as other fungi.

Moreover, the study reports only *Alternaria* levels, but the finding of the department was that "Dr. Fink and Dr. Schlueter diagnosed the [decedent's] condition as a hypersensitive pneumonitis caused by the deceased's exposure to the *Alternaria* spore and *other material* with which [he] came in contact while on the [appellant's] premises." (emphasis added) Both Dr. Fink's report and the autopsy report contain reference to possible affliction by other fungi. Combined with the other evidence in the record, it may reasonably be inferred that the decedent's disease was due, not only to exposure to *Alternaria*, but also exposure to other fungi in combination with *Alternaria*.

Thus, it is obvious that the evidence, the study and testimony of Dr. Emanuel, offered by appellant is not conclusive and merely presents questions of the weight and credibility of the evidence, questions reserved solely for the finder of fact, the department.

The appellant also challenges Dr. Schlueter's testimony claiming it was not based upon facts or evidence considered proper by the law. Dr. Schlueter, although he had not treated the decedent, had examined him and

consulted with Dr. Fink, the treating physician. It is obvious from the article published with Dr. Fink that he was intimately associated with the case, and his opinion was based upon facts within his personal knowledge. This has always been held to be a proper basis for medical opinion. *Milbauer v. Transport Employes' Mutual Benefit Society,* 56 Wis.2d 860, 866, 203 N.W.2d 135, 139 (1973); *Rabata v. Dohner,* 45 Wis.2d 111, 172 N.W. 2d 409 (1969).

While Dr. Schlueter's testimony was properly based upon personal knowledge, the appellant also challenges the accuracy of certain facts he relied upon. Each of these challenges again raises only the question of the weight and credibility of the expert's testimony. For example, Dr. Schlueter's medical article states the decedent worked in the wood room for thirty-five years, but actually he spent only twenty years in the wood room. Dr. Schlueter testified, however, that this discrepancy would not change his opinion. It is clear this sort of matter is one only of the weight and credibility of the evidence.

We conclude that the evidence and arguments presented by the appellant do not render the evidence supporting the department's finding inherently incredible, and therefore that finding that Ralph Cotter's death was the result of an occupational disease acquired in employment at the appellant's paper mill is conclusive.

*By the Court.*—Judgment affirmed.