KOHLER COMPANY, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Respondents.

*No. 76–024. Argued October 31, 1977.—Decided November 30, 1977.*
(Also reported in 259 N.W.2d 695.)

For the appellant there was a brief and oral argument by *Kenneth W. Conger* of Kohler.

For the Department of Industry, Labor and Human Relations the cause was argued by *Gordon Samuelsen*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For Gerhard Goedde there was a brief by *Rabinovitz & Sonnenburg*, and oral argument by *David Rabinovitz* of Sheboygan.

Brief amicus curiae for Wisconsin AFL–CIO was filed by *Albert J. Goldberg*, and *Goldberg, Previant & Uelmen, S. C.* of Milwaukee.

BEILFUSS, C. J.   Three issues are presented upon appeal:

(1)  Was there credible evidence to support the finding of 100 percent total permanent disability?

(2)  Should the test for review be changed from any credible evidence to substantial evidence in view of the entire record?

(3)  Was the claim barred by the statute of limitations because of a dismissal of the 1960 application?

The claimant, Gerhard Goedde, started working for the appellant, Kohler Company, on January 16, 1935. He worked as a pottery caster until February, 1950,

when he was transferred to another department upon the recommendation of his doctor. The record indicates that X-rays revealed some silicosis as early as 1949.

Silicosis is an industrial disease, a type of pneumoconiosis, caused by inhalation of air containing free crystaline silica.[1] Sand consisting of silica is used extensively in the pottery industry. Goedde was exposed to free silica dust for the fifteen years he worked in the Kohler pottery unit.

Goedde claimed he had difficulty breathing before his transfer and that his condition was slowly becoming worse. The X-rays taken at that time verified his complaints. He held a variety of other positions with Kohler until his retirement in early 1973. He did not work at the Kohler Company from April 3, 1954 to October 3, 1960, because of a strike.

On April 4, 1960, Goedde made an application to the then Industrial Commission for disability benefits because of silicosis. He did not claim actual disability but filed the application to preserve his claim. Kohler Company made a motion to dismiss on April 12, 1960. On April 24, 1962, the Industrial Commission dismissed the application "without prejudice at applicant's request." Other than the order itself there is no indication in the record that Goedde requested a dismissal, nor otherwise appeared. No hearing was held and Goedde did not challenge the order either before the commission, in the trial court or in this court.

A new application was filed on January 23, 1974, and a hearing held in May of 1975. In July, 1975, an examiner for the department found Goedde was 100 percent permanently disabled and ordered compensation. On October 16, 1975, the commissioners of DILHR amended the findings of the examiner to provide that no statutory

---

[1] Gray, *Attorneys' Textbook of Medicine,* Vol. 4A, sec. 205E.01.

authority existed for the Industrial Commission to enter orders except upon stipulation, compromise or after hearing, and that because no stipulation, compromise or hearing was held on the motion to dismiss the 1960 application, the order of April 24, 1962 was a nullity and the claim of 1960 was viable. In all other respects the findings and order of the examiner were confirmed. This action to challenge the order of DILHR was thereafter commenced in the circuit court, affirmed there, and appealed here.

The Kohler Company admits that Goedde does have some silicosis but contends there is no credible evidence to sustain the finding of 100 percent permanent disability.

The rule on review of workers' compensation matters was restated in *R. T. Madden, Inc. v. ILHR Dept.*, 43 Wis.2d 528, 548, 169 N.W.2d 73 (1969) :

"If there is credible, relevant, and probative evidence and that evidence construed most favorably would justify men of ordinary reason and fairness to make that finding, the evidence is sufficient. A finding should rest upon such evidence and not upon mere scintilla of evidence or upon conjecture and speculation."

In this case the testimony of Dr. Raymond Evers stands alone against the contradictory testimony and findings of several other doctors. In *Theodore Fleisner, Inc. v. ILHR Department*, 65 Wis.2d 317, 322, 222 N.W.2d 600 (1974), this court held that inconsistencies or conflicts in medical testimony are for the department to weigh. The role of the courts is solely to examine the testimony for the purpose of determining whether it should be disregarded as being incredible as a matter of law.

The opinions of Dr. Evers were apparently adopted by the examiner as the basis of 100 percent disability—50 percent disability from silicosis and 50 percent disability from the cor pulmonale (pulmonary heart disease). Kohler accepts the finding that some disability resulted from silicosis but contends that there is no credible evidence to support Dr. Evers' conclusion of 50 percent disability. Kohler flatly rejects as incredible Evers' finding that Goedde was also disabled by cor pulmonale as an outgrowth of silicosis.

X-ray evidence of silicosis first appeared in 1949. A series of letters in that year and in 1950 from Dr. William Moir to Dr. Gascoigne of the Kohler Company point out evidence of silicosis.

Dr. Evers, the only witness for Goedde, is a specialist in pulmonary diseases and is the head of two health care facilities. While these institutions are now primarily geriatric facilities, they were formerly heart care facilities and still concern themselves extensively with heart problems.

Dr. Evers first examined Goedde in 1956, and such examinations continued several times each year, to February of 1975. The examinations included chest X-rays and a symptomatic checkup. Sometimes a general physical was also given. Because of his almost twenty-year association with Goedde as his treating and examining doctor, Dr. Evers had a better opportunity than the other physicians to know of Goedde's condition.

Silicosis was evident in the first examination in 1956. Further examinations demonstrated a progressive, but gradual, deterioration.

A brief summary of the evidence presented by Kohler on the silicosis issue is as follows: In 1974, Dr. Matthew B. Divertie of the Mayo Clinic indicated that Goedde could have silicosis but that disability was at most 20 percent. Dr. Donald Schlueter stated that the condition

was perhaps 10 percent disabling. In a report to the Kohler Medical Department, Dr. O. A. Sander stated that, although silicosis was present, it was not disabling. However he admitted that Goedde would be unable to do heavy work and would have to rest periodically. Dr. G. A. do Pico, of University Hospitals in Madison, indicated that silicosis was probably present but that Goedde's pulmonary functions were "fairly normal."

One of the arguments of Kohler is that, to some extent, Dr. Evers relied on some of the studies carried out by Kohler's witnesses or by persons whose studies support Kohler.

For example, upon receipt of a letter from Dr. do Pico which included a chart showing pulmonary functions, Dr. Evers wrote Goedde's attorney and stated that Goedde should be able to get at least 50 percent disability. On cross-examination Dr. Evers indicated that the 50 percent was only disability for silicosis, not cor pulmonale. He stated that the figure was based on the pulmonary function studies which showed that

". . . his diffusing capacity was about 50 percent of normal. In fact, that's how I picked up the 50 percent at that time."

Dr. do Pico's study, however, stated:

"His pulmonary functions, a copy of which is included, were fairly normal with mild obstruction and some mild gas exchange impairment being the only abnormality."

Dr. Evers then denied that he had relied on Dr. do Pico's study, stating that he had merely considered it. Rather, he relied on a study "done by my colleague in the rear of the room." Evidently he was referring to a study done by Dr. Schlueter. This then became a new basis for the 50 percent figure. However the interpretive section of that study, which measured steady state diffusing capacity, terms capacity as slightly low.

Dr. Evers, however, testified that even if Dr. Schlueter were to testify that the figures were near normal he would not change his opinion as to 50 percent abnormality.

Dr. Schlueter opined that the test indicated that Goedde's diffusing capacity was "78 percent of the lower predicted normal"; that the result was almost identical to that reached by Dr. Divertie and by Dr. do Pico. The other tests conducted by Dr. Schlueter were completely normal.

The fact that Dr. Evers did not conduct these tests does not mean that the department could not accept his interpretation because other doctors had different opinions as to their meanings. This court has stated that the results of a scientific study are merely elements of proof to be weighed by the trier of fact; that as to such results the fact finder is the sole judge of the credibility and weight to be attached thereto.[2] Thus the results of these tests, even if Kohler's view of them is correct, are not conclusive.

Dr. Evers testified:

"As I told you before, I use the pulmonary function figures I had, which are referred to me by persons who are much more highly trained in doing these, to fit into the clinical picture of the patient. . . .

". . .

". . . as Doctor Gensler stated in his lecture . . . that he feels that we should not use only the pulmonary function study to determine the state of the patient, but the patient's physical examination, his history, his exposure, the whole works, and this is what I try to do too."

Because Dr. Evers had been treating Goedde for almost 20 years it is evident that he would be in a better

---

[2] *Consolidated Papers, Inc. v. ILHR Dept.*, 76 Wis.2d 210, 220–21, 251 N.W.2d 69 (1977).

position than the other doctors to evaluate the other factors involved. His testimony and opinions cannot be characterized as incredible.

Although Dr. Evers did not enumerate the specific factors, these could include symptomatic evidence such as Goedde's breathing difficulty, coughing and spitting; the fact that Goedde worked for fifteen years in a highly silica polluted atmosphere; Goedde's difficulty working at home, gardening, walking steps, and even playing with his grandchildren; plus X-rays which show a slow but steady progression of the disease over a twenty-five year period. Dr. Schlueter agreed that the pulmonary function test was not the only method for determining disabling silicosis.

It thus appears that there was some credible evidence which supports the finding of 50 percent disability for silicosis.

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any evidence to sustain the finding the commission did make." *Unruh v. Industrial Comm.*, 8 Wis.2d 394, 398, 99 N.W.2d 182 (1959).

Cor pulmonale is a cardiac disease which is caused by hypertension of the pulmonary arteries and causes stress upon the right side of the heart. Dr. Evers testified that he concluded for the first time that Goedde had the disease in 1974. He stated that silicosis causes hypertension of the pulmonary arteries and that Goedde had been hospitalized from June 11 to June 17, 1974, as a result of "cardiac decompensation."

Again there was a question in interpreting testing procedures—here an electrocardiogram to determine the existence of cor pulmonale. Initially Dr. Evers thought the EKG showed the disease. A letter to Goedde's attorney on October 30, 1974, stated that while the EKG was

difficult to interpret because of other heart complications, "I think I now have my proof" of cor pulmonale.

However, a letter to Dr. Evers from Dr. James D. Michael on November 1, 1974, stated that the EKG would not support a diagnosis of cor pulmonale. Upon receipt of the letter Dr. Evers again wrote Goedde's counsel and retracted his earlier statement that the EKG was proof of cor pulmonale. However he still insisted that "clinically this patient had cor pulmonale acutely."

On cross-examination Dr. Evers testified that he had been mistaken as to the EKG but remained steadfast in his opinion that clinically Goedde had disabling cor pulmonale. He stated that there was symptomatic evidence: an enlarged, tender liver; fluid in the chest and abdomen; distention of the neck veins; and irregular hilar densities. He denied that these symptoms were typical of the other heart complications—a left bundle branch block and arteriosclerosis—which also afflicted Goedde.

Dr. Evers also testified that recent X-rays showed cor pulmonale. Kohler's brief points out testimony which indicates that the condition could not be X-rayed. But Dr. Evers testified that cor pulmonale only appears on X-rays during an acute stage. X-rays taken both before and after Goedde's 1974 hospitalization gave no evidence of the disease, but an X-ray taken during hospitalization did. He further stated that Goedde was now being treated with Digitalis and diuretic and that cor pulmonale would not show up, that the disease was under control but still present.

Although he believed that the condition was under control, Dr. Evers said that this made no difference in terms of actual disability:

"Cor pulmonale is a clinical condition of the heart which is very labile, and by this I mean that the treatment of it is very short-lived, and the possibility of a recurrence at any minute is possible; the acute thing I mean. He has a chronic cor pulmonale all the time, but

the acute episode can come back at any minute and that's the reason I feel that this is a very sick man, who is in danger of death momentarily."

Dr. Evers stated that the incident which led to the 1974 hospitalization was typical of cor pulmonale. As with the silicosis diagnosis, all reports, past histories, X-rays and examinations were considered. It appears that the major factor in Dr. Evers' opinion was his positive diagnosis of cor pulmonale during Goedde's 1974 hospitalization.

On behalf of Kohler, Dr. Schlueter indicated that the pulmonary function tests did not show cor pulmonale. Dr. Schlueter did concede, however, that such tests were not the sole basis upon which to judge disability, and that he was generally unfamiliar with Goedde's medical and occupational history. Dr. Sander testified that the X-rays and lung function tests did not show cor pulmonale. However, he had not examined Goedde since 1973.

Dr. Evers' testimony was not patently incorrect. It was sufficient to constitute credible evidence to support a finding of 50 percent disability due to cor pulmonale even though it might not meet the substantial evidence test.

The Kohler Company asks this court to abandon the "any credible evidence" test and adopt a test which requires substantial evidence.

The court recently refused to abandon the any credible evidence rule. *Consolidated Papers, Inc. v. ILHR Dept.,* 76 Wis.2d 210, 251 N.W.2d 69 (1977). Although the suggested alternative in *Consolidated Papers* was whether the finding was against the great weight of the evidence, the case deals with, and disposes of, the major arguments presented by Kohler against the present test.

Basically, the same arguments are made here that the court recently considered in *Consolidated Papers.*

Kohler contends in the present case the "any credible evidence" rule does not permit a meaningful review of administrative fact finding. The court's response to the argument in *Consolidated Papers* was:

"This contention is not correct, for under the 'any credible evidence' test, the record must contain evidence supporting the finding which is relevant, evidentiary in nature, not a conclusion of law, and not so completely discredited by other evidence that a court could find it incredible as a matter of law." 76 Wis.2d at 214

Kohler next argues there is no sound reason for having a lesser standard of review in workers' compensation cases than in other administrative agency decisions and that this court has the power to change the rule of review.

In considering like arguments in *Consolidated Papers,* we stated:

"The test for review of department findings is not purely a judicial creation, but since the enactment of the Workmen's Compensation Act, this court has held that the legislature compels the employment of this test by the statutory section of the act, presently sec. 102.23, Stats., regarding judicial review. . . .

". . .

"These statutory statements require the confirmation of findings if there is any credible evidence to support them. . . .

"The legislature's purpose in limiting the scope of judicial review in workmen's compensation cases is to limit appeals and protracted litigation, in the interest of speedy justice for the workingman. . . ." 76 Wis.2d at 215–16

Despite language in earlier cases cited by Kohler,[3] we adhere to the rule as fully considered and set forth in *R. T. Madden, Inc. v. ILHR Dept.,* 43 Wis.2d 528, 548, 169 N.W.2d 73 (1969):

[3] *Jasperson v. Industrial Comm.,* 231 Wis. 142, 285 N.W. 391 (1939); *Milwaukee Coke & Gas Co. v. Industrial Comm.,* 160 Wis. 247, 151 N.W. 245 (1915).

"If there is credible, relevant, and probative evidence and that evidence construed most favorably would justify men of ordinary reason and fairness to make that finding, the evidence is sufficient. A finding should rest upon such evidence and not upon a mere scintilla. . . ."

The "any credible evidence" test has been applied to workers' compensation cases for several years. As such it becomes a part of the statute by interpretation. If a more stringent test is to be applied in review of workers' compensation cases, we believe that change more properly rests with the legislature than the courts.

The Kohler Company contends Goedde's claim was dismissed in 1962 and that it is now barred by the six-year statute of limitations.

These arguments were made before the commissioners in their review of the examiner's findings and order. The commissioners concluded that under the statute[4] the order of dismissal was a nullity because it was not based upon a stipulation, a compromise, or after a hearing.

---

[4] "102.18 *Findings and award.* (1) After final hearing the commission shall make and file its findings upon all the facts involved in the controversy, and its order, which shall state its determination as to the rights of the parties. Pending the final determination of any controversy before it, the commission may after any hearing make interlocutory findings, orders and awards which may be enforced in the same manner as final awards. The commission may include in its final award, as a penalty for noncompliance with any such interlocutory order or award, if it shall find that noncompliance was not in good faith, not exceeding twenty-five per cent of each amount which shall not have been paid as directed thereby. Where there is a finding that the employe is in fact suffering from an occupational disease caused by the employment of the employer against whom the application is filed, a final award dismissing such application upon the ground that the applicant has suffered no disability from said disease shall not bar any claim he may thereafter have for disability sustained after the date of said award."

Kohler claims that even if a hearing was required, Goedde's remedy was to appeal the dismissal and that failure to do so constitutes waiver. If a hearing was required in the absence of a stipulation or compromise, it was jurisdictional and is not waived.

When a court or other judicial body acts in excess of its jurisdiction, its orders or judgments are void and may be challenged at any time.

"A judgment or order which is void may be expunged by a court at any time. Such right to expunge a void order or judgment is not limited by statutory requirements for reopening, appealing from, or modifying orders or judgments. [Cases cited.]" *State ex rel. Wall v. Sovinski,* 234 Wis. 336, 342, 291 N.W. 344 (1940). *See also, Home Bank v. Becker,* 48 Wis.2d 1, 7, 179 N.W.2d 855 (1970).

The fact that the award came many years after the void order is of no consequence. In *Halbach v. Halbach,* 259 Wis. 329, 331, 48 N.W.2d 617 (1951), the void judgment was challenged ten years after entry. The court stated that laches did not apply even if the plaintiff had been dilatory or lackadaisical in his efforts to overturn the judgment. "It is the duty of the court to annul an invalid judgment."

A void judgment cannot be validated by consent, ratification, waiver, or estoppel.[5] Furthermore, void judgments may be attacked collaterally. The 1960 application was still valid.

*By the Court.*—Judgment affirmed.

---

[5] 49 C.J.S., *Judgments,* p. 883, sec. 452; 49 C.J.S., *Judgments,* p. 792, sec. 401.