OSCAR MAYER FOODS CORPORATION,
Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
and Tonya Mahler, Defendants-Respondents.†

Court of Appeals

*No. 88-0377. Submitted on briefs June 15, 1988.—Decided
July 21, 1988.*

(Also reported in 429 N.W.2d 89.)

† Petition to review denied. HEFFERNAN, C.J., took no part.

For the plaintiff-appellant the cause was submitted on the briefs of *Kenneth T. McCormick, Jr.* and *Boardman, Suhr, Curry & Field* of Madison.

For the defendant-respondent Labor and Industry Review Commission the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *James P. Altman,* assistant attorney general, of Madison.

For the defendant-respondent Tonya Mahler the cause was submitted on the brief of *John D. Neal* and *Stafford & Neal, S.C.* of Madison.

Before Dykman, Eich and Sundby, JJ.

EICH, J. Oscar Mayer Foods Corporation appeals from a judgment affirming a decision of the Labor and Industry Review Commission. The commission ruled that Tonya Mahler, an Oscar Mayer employee, suffered an injury compensable under the Worker's Compensation Act when she tripped and fell while attempting to climb over a barrier in the company parking lot on her way to work. The issue is whether the commission could reasonably determine that, at the time of her injury, Mahler was going to work on a "direct route" and "in the ordinary and usual way" within the meaning of sec. 102.03(1)(c)2,

Stats. Because we believe the commission could not reasonably so conclude, we reverse.

The facts are not in dispute. At the time of her fall, Mahler was forty-seven years old. She stood five feet five inches tall and weighed 245 pounds. On the day of the injury, she drove to work at the Oscar Mayer plant and parked in the lot. The lot has several parking lanes separated by barriers consisting of steel cables strung from a series of intermittently-spaced wooden posts. The cables are suspended thirty to thirty-two inches above the ground, and the lot is so laid out that Mahler could have followed an unobstructed route along the traffic lanes and parking rows as she traveled from her car to the plant entrance. Instead, she elected to cross the lot diagonally, stepping over the barriers as she reached them. She traversed the first barrier without incident, but, while attempting to step over the cable at the second barrier, she caught her foot and fell, sustaining the injuries for which this claim was brought.

A Department of Industry, Labor and Human Relations hearing examiner determined that Mahler was entitled to compensation because, at the time of her injury, she was "on a direct route to the employer's work premises and ... was traveling in an ordinary and usual way at the time," within the meaning of the statute. On appeal, the commission affirmed the award, changing only the last portion of the examiner's determination to make it read that Mahler was traveling "in *the* ordinary and usual way at the time." (Emphasis added.)

Oscar Mayer sought judicial review, and the court, concluding that the commission's interpretation and application of sec. 102.03(1)(c)2, Stats., were reasonable, affirmed the award.

We review the commission's determination under the same rules applicable to judicial review in the circuit court. *Gilbert v. Medical Examining Board,* 119 Wis. 2d 168, 194, 349 N.W.2d 68, 79–80 (1984). However, the parties disagree as to the proper scope of that review.

The commission maintains that the determination that Mahler's conduct met the statutory standard is a "true finding of fact" which must be sustained on appeal if supported by substantial evidence in the record, citing *Consolidated Papers, Inc. v. ILHR Dept.,* 76 Wis. 2d 210, 216, 251 N.W.2d 69, 72 (1977), and *Mrs. Drenk's Foods v. Industrial Comm.,* 8 Wis. 2d 192, 196–97, 99 N.W.2d 172, 175 (1959). The "true finding of fact" in *Consolidated Papers,* however, was whether the employee's death "was caused by an occupational disease arising out of his employment," *id.* at 216, 251 N.W.2d at 72; and, to answer the question, the commission was required to resolve conflicting medical testimony. The issue was the same in *Mrs. Drenk's Foods,* and in that case the "ultimate fact"—whether the employee "'sustain[ed] injury arising out of [her] employment'"—and its resolution required the commission to choose between conflicting medical testimony as to the cause of the employee's medical condition. *Id.* at 196, 99 N.W.2d at 175.

The commission's determination in this case did not center around the medical cause of the employee's illness, as in *Consolidated Papers* and *Mrs. Drenk's Foods.* Rather, it was a determination that the "historical facts"—Mahler's conduct on the day in question—met the statutory standard of "ordinary and usual" employee conduct. Normally such questions are ques-

tions of law, which we review *de novo,* according deference to the agency's decision in appropriate cases. *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 116–17, 287 N.W.2d 763, 768 (1980). Mahler and the circuit court agree that this is the appropriate standard, and both rely on the following statement of the rule in *Nigbor v. DILHR,* 120 Wis. 2d 375, 383–84, 355 N.W.2d 532, 537 (1984):

> [R]egardless of how a question is labeled, when a Commission determination calls for a value judgment, this court must decide in each type of case the extent to which it should substitute its evaluation for that of the agency. ... [W]hen the expertise of the agency is significant to the value judgment, the agency's decision, although not controlling, should be given weight. We conclude that the Commission has developed significant expertise in determining when an employee is acting within the scope of his [or her] employment and that Commission decisions in such matters should be given weight and deference. We will thus defer to the Commission's conclusions if they are found to be reasonable, even if this court would not have reached the same conclusions. (Citations omitted.)

We believe this is the correct standard, and we conclude that the commission's determination that Mahler "was injured while on a direct route to the employer's work premises and ... was traveling in the ordinary and usual way at the time" was unreasonable.

In *Dardanell v. Dept. Industry, Labor & Hu. Rels.,* 37 Wis. 2d 249, 253–54, 155 N.W.2d 43, 45 (1967), the supreme court discussed sec. 102.03(1)(c)1, Stats. (1965) (now sec. 102.03(1)(c)2), as follows:

It is apparent that the legislature carefully chose its words and that, when it chose to extend the liability of the employer, it did not intend by this statute to extend coverage for any conduct that was unusual or extraordinary in terms of going to or from the employer's premises.

■

Oscar Mayer suggests that Mahler's route must be considered unusual in light of her testimony that, in the nearly twenty years she had been parking in the lot, she had stepped over the strung cables "just occasionally" or, at most, "several times" (and Oscar Mayer points out that in those years she would have made more than 4,000 trips across the lot). We agree. It may be, as the department's hearing examiner suggested, that Mahler's line of travel was a "beeline" to the plant, but when that line involves climbing over a series of barricades nearly three feet high, we do not consider it to be a "direct route" within the meaning of the statute.

■

We also believe that, given Mahler's age, weight and height—she is sixty-five inches tall, and the cables were suspended thirty to thirty-two inches above the ground, roughly half of her total height—the route she chose to take to the plant entrance was not "usual and ordinary" but extraordinary and perilous.

In *Corcoran v. Fitzgerald Bros.*, 58 N.W.2d 744, 746 (Minn. 1953), the court held that an employee who fell while leaving work when he attempted to climb over a fence rather than walk to an unlocked gate some four blocks away was not entitled to compensation:

> [W]here an employer ... furnish[es] a safe means of ingress and egress and the employe, for his [or her] own convenience, chooses not to use it but, instead, selects a more hazardous means of leaving the premises, not customarily used by employes, he [or she] steps outside the scope of his [or her] employment and it cannot then be said that an injury which he [or she] sustains while so leaving the premises arises out of his [or her] employment.

■ We think the same reasoning is applicable here. Rather than take the unobstructed, safe route to the plant, Mahler, in order to save time, chose the barricaded route. While Mahler and other Oscar Mayer employees had cut across the lot in this manner on occasion in the past, there is no evidence that this was a regular or customary practice for any of them.

Mahler suggests that "[i]n the real world, there may be more than one ordinary and usual way to get from point A to point B." We agree. But when one way requires that a forty-seven-year-old five-foot-five-inch 245–pound person climb over barricades approximately half his or her own height, and the other way is flat and obstruction-free (although perhaps a few feet longer to the ultimate destination), we believe that choosing the former entails a danger to the employee that the worker's compensation law was not designed to insure against.

■ Keeping in mind the liberal construction we must accord to such laws, and considering also the deference we owe to the commission, we nonetheless conclude that the commission's decision to allow compensation in this case, predicated on its determi-

nation that Mahler's perilous path to the plant was the "usual way" to travel, and that she was traveling it "in the ordinary and usual way," is unreasonable and must be reversed.

*By the Court.*—Judgment reversed and cause remanded to the circuit court with directions to enter judgment reversing the commission's decision.

DYKMAN, J. (*dissenting*). It is tempting to look at Mahler's height and weight, and conclude that she was negligent or foolish in attempting to get to work by climbing over a cable designed to discourage that behavior. The majority, by considering Mahler's height and weight, succumbs to this temptation. However, employee negligence is not relevant in worker's compensation cases. *Brenne v. ILHR Department,* 38 Wis. 2d 84, 91, 156 N.W.2d 497, 500 (1968).

The real issue is whether Mahler was going to her employment in the "ordinary and usual way." Sec. 102.03(1)(c)2., Stats. "[O]rdinary and usual way" is not a term with only one possible meaning. It can be interpreted narrowly or broadly. For instance, Mahler was going to work as she had done many times before, by parking her car and traversing the company's parking lot on foot. On the other hand, she was going to work in a way she had never done before, because each time she walked across the parking lot, her footsteps fell in slightly different places.

Courts recognize an agency's expertise, and the value of uniform rules for persons seeking an administrative remedy. We therefore affirm agency action, even when that consists of statutory interpretation, unless the agency's conclusion is unreasonable. The majority recognizes this rule.

872

I, however, cannot conclude that the agency's broad interpretation of sec. 102.03(1), Stats., is unreasonable. Under the majority's theory, an injured employee will be denied compensation unless the employee is injured while doing something exactly as he or she has done it before, or is not negligent while attempting something new. The purpose of worker's compensation statutes is to provide financial and medical benefits to persons whose injuries are "work-connected." *Brenne,* 38 Wis. 2d at 91–92, 156 N.W.2d at 500. I would conclude that the agency's decision to do so for Mahler was reasonable.