**William James MURPHY, Appellant,**

v.

**Tomey Jean MURPHY, Appellee.**

**No. 50968.**

Court of Appeals of Oklahoma
(Division No. 1).

April 4, 1978.

Released for Publication by Order of Court of Appeals May 25, 1978.

---

490

Frederick L. Boss, Jr., and Bethel B. Larey & Lance L. Larey, by Bethel B. Larey, Tulsa, for appellant.

John J. Tanner, Tulsa, for appellee.

ROMANG, Judge:

In this appeal we must address the question of the effect in Oklahoma of a divorce and child custody decree of a New Mexico court where both spouses appeared, but where the former husband now seeks to question the domiciliary jurisdiction of the New Mexico courts, a question he saw fit not to raise in New Mexico. This could have been a complex and confusing case but for the professional briefing by both parties.

William and Tomey Murphy were married and apparently domiciled in Oklahoma. He being a horse trainer and she a jockey, they followed the racing circuit in Colorado and New Mexico, among other places. Two children were born of the marriage—a boy age 5 and a girl age 1½ at the time of the proceedings below.

While in Raton, New Mexico, the wife informed her husband of her desire to get a divorce. She sought out legal counsel and filed the appropriate verified petition alleging, *inter alia*, that both parties "are now and have been actual bona fide residents of the County of Colfax, State of New Mexico, for more than six months . . . ." The husband filed a sworn "Waiver of Service, Entry of Appearance, and Consent to Hearing" consenting, *inter alia*, "that judgment may be entered in the above entitled cause in accordance with the plaintiff's complaint forthwith . . . without further notice to the defendant." The wife's petition had sought a divorce, custody of the two children with reasonable visitation rights in the husband, child support of $150 per month per child, attorneys fees, and approval of the couples' agreed division of their community property. A "Final Judgment and Decree" was entered by the New Mexico court as requested. The husband did not actually appear at that hearing.

A month or so later, the husband (Appellant hereafter) filed a "Petition for Modifi-

cation of Final Judgment and Decree" in the New Mexico court. This relief was denied and, *sua sponte*, the court found the Appellant in contempt for his failure to deliver the children to the wife (Appellee hereafter). The facts surrounding this proceeding are confused but not apparently critical to this appeal. Appellant apparently purged himself of the contempt by delivery of the children.

Some time later, the Appellant acquired custody of the boy under the reasonable visitation provisions of the final decree and, with Appellee's consent, brought the son to Oklahoma. Thus the boy was legally brought into this State.

In Oklahoma the Appellant filed the instant action seeking a divorce (on the ground the New Mexico decree was void), approval of the parties' earlier agreed property settlement, custody of the boy, custody in the Appellee of the girl, and $150 per month child support for the girl. It is noteworthy that the only difference in the New Mexico decree and the relief sought by Appellant herein is the custody of the boy.

After an *ex parte* proceeding on the merits, the District Court heard Appellee's motions and found that the New Mexico decree was entitled to full faith and credit and that the Oklahoma court was without jurisdiction in the matter. From this decision, Appellant appeals alleging (1) that the District Court improperly considered the New Mexico proceedings without proper authentication under 28 U.S.C. § 1738 and 12 O.S.1971, § 485 (we also note the applicability of 12 O.S.1971, § 1705.01); and (2) that the District Court improperly applied the doctrine of Full Faith and Credit.

A.

AUTHENTICATION OF SISTER STATE JUDICIAL PROCEEDINGS

Article IV, Section 1 of the U.S. Constitution requires each state to give full faith and credit to the judicial proceedings of every other state and that Congress may proscribe the manner in which they may be

proved and the effect thereof. Under this authority Congress has provided for authentication of judicial proceedings "by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form." 28 U.S.C. § 1738. When so authenticated the judicial proceedings "shall have the same full faith and credit in . . . [Oklahoma] as they have by law or usage in the courts of such State . . . from which they are taken [i. e. New Mexico]." 28 U.S.C. § 1738.

■ But this method of authentication is not exclusive and state statutes can prescribe less stringent standards for proof of a sister state judgment. See *U. S. v. Mathies*, 350 F.2d 963 (3rd Cir. 1965); *Gribble v. Pioneer Press. Co.*, 15 F. 689 (C.C.Minn. 1883); *In re Peterson*, 22 N.D. 480, 134 N.W. 751 (1912) (dicta); and *Block v. Schafer*, 62 Okl. 114, 162 P. 456 (1917) (dicta). Accordingly, we must also consider two Oklahoma statutes: 12 O.S.1971, §§ 485 and 1705.01.

While 12 O.S.1971, § 485 speaks of "courts of a foreign country", the statutory standards have been applied to sister statutes. See e. g. *McIntire v. Torrance*, 185 Okl. 19, 90 P.2d 17 (1939). In any event § 1705.01 clearly applies to any "official record kept within . . . any state . . . ." The standards of the two statutes are not only similar to each other but similar to 28 U.S.C. § 1738 as well. Thus § 485 requires that the proceedings (1) be attested by the clerk or official custodian, (2) be accompanied by a certificate of a judge of the court to the effect that the person attesting the copy is the legal custodian and that his/her signature is genuine, and (3) be accompanied by a certificate of the custodian of the seal of the state that the court is lawfully constituted. Section 1705.01 provides for proof by (1) an official publication, or (2) "a copy attested by the officer having legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody." Further provision is made for the

judge to certify the attesting officer's custody.

In the instant case the New Mexico proceedings were evidenced by copies attested as true and accurate by the Deputy Clerk of the New Mexico court. No effort was made to secure the additional certificates of the custodians authority as required by 28 U.S.C. § 1738, 12 O.S.1971, §§ 485 and 1705.-01 or the state seal of the court's authority under § 485 (this provision may have been rendered unnecessary by § 1705.01 or may be inconsistent with 28 U.S.C. § 1738).

■ Thus it is clear that the evidence in support of the New Mexico proceedings was not sufficient to compel full faith and credit under 28 U.S.C. § 1738 or to prove the proceedings under 12 O.S.1971, §§ 485 or 1705.01. But this is not an adequate basis for reversing the trial court. At no time was it alleged that the copies proffered were inaccurate or misleading. Appellant has failed to indicate what prejudice he has suffered by reason of the error. Appellate review is not, and ought not be, a word game or a search for theoretically perfect proceedings below. The legislature has enjoined us to be concerned with error which does affect "the substantial rights of the adverse party." 12 O.S.1971, § 78. In § 78 it is provided that a "court . . . *must* disregard any error or defect in the . . . proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed by reason of such error or defect." (Emphasis added.) No substantial violation is shown to result from the lack of a certificate of the deputy clerk's custody and no challenge is made to the accuracy of the documents or the fact of the clerk's custody. No reversible error occurred.

### B.

### FULL FAITH AND CREDIT

■ The U.S. Constitution requires Oklahoma courts to give "Full Faith and Credit" to the judicial proceedings of New Mexico, *inter alia*. Article IV § 1. As already indicated the Constitution autho-

rizes Congress to prescribe the effect of properly proved proceedings. Under this authority Congress has required that properly proven judicial proceedings of New Mexico be given "the same full faith and credit . . . [in Oklahoma] as they have by law or usage in . . . [New Mexico]." 28 U.S.C. § 1738. It is always the effect where rendered which determines the effect in a sister state. Appellant properly argues that the beginning inquiry must be a determination of the effect of the decree in New Mexico and whether it is subject to collateral attack in that state. If not, it may not be so attacked in this state.

It must be noted that what Appellant seeks to do is to set aside the New Mexico decree on the ground that the New Mexico court lacked jurisdiction over the subject matter because neither Appellant nor Appellee were domiciled in New Mexico nor had either of them been bona fide, actual residents for six months preceding the New Mexico proceedings. This factual question was not reached below and we do not reach it. The issue is simply whether full faith and credit precludes further inquiry, in this case, of the fact of residence and domicile.

■ Appellee contends that we need not reach this question since Appellant voluntarily entered an appearance and subsequently sought affirmative relief in New Mexico. Appellee, therefore, contends that Appellant is bound personally and may not now complain of the New Mexico proceedings. Appellant repeats with ample citation that parties cannot confer subject matter jurisdiction on a court by consent. That is clearly true. But it misses the thrust of Appellee's argument.

■ Full faith and credit is a national policy designed to pull the states together in judicial matters of civil litigation. See Leflar, American Conflicts Law p. 165 (1968). Its purpose is simply to mandate that the mere fact that a judgment or decree was rendered in another state is no basis for the forum's refusal to recognize it, as could be done at common law. The Constitution recognizes, however, that the

U.S. Constitution itself may limit the power of the rendering state so that the judgment is not valid where rendered and that the law of the rendering state may permit collateral attack on its own judgments. In such cases, no national policy concerning national unity has any interest in mandating recognition of a judgment not recognizable where rendered. But the issues of recognition or not, of validity or not, are also legal issues to which full faith and credit may apply.

Thus in *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) the Supreme Court held that Nebraska's determination that certain real property along the Nebraska-Missouri border was in Nebraska, in a proceeding where the Nebraska courts had personal jurisdiction and the issue was actually litigated, was entitled to full faith and credit in a subsequent proceeding in Missouri. The rendering state's own determination of the location of the subject matter of the lawsuit was preclusive of subsequent litigation. Similarly, in *Sherrer v. Sherrer*, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948) the Court held that a Massachusetts husband, who appeared in a Florida divorce proceeding initiated by the wife, could not subsequently attack the Florida decree in Massachusetts on the ground that the wife was not actually domiciled in Florida at the time the divorce was granted.

But in both these landmark cases it was clear that the rendering courts had personal jurisdiction sufficient to bind the parties to their decision on location or domicile and the decisions were not otherwise subject to collateral attack where rendered. In *Sherrer, supra*, p. 350, 68 S.Ct. p. 1090 the Supreme Court noted:

"[t]his Court has also held that the doctrine of *res judicata* must be applied to questions of jurisdiction in cases arising in state courts involving the application of the full faith and credit clause where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attack." (Footnotes omitted.)

The Oklahoma case of *Brasier v. Brasier*, 200 Okl. 689, 200 P.2d 427 (1948) is discussed by both parties as raising questions as to whether a sister state's judicial conclusion of domicile in a divorce action ever precludes relitigation in a record forum. An examination of that case does raise difficult questions. In *Brasier* Oklahoma domiciliaries were divorced by an Arkansas court. The Arkansas divorce included an agreed property settlement and was procured with the consent of the wife who never was actually in Arkansas. The Supreme Court emphasized that the wife had limited education and business judgment, had occupied herself in raising five children, and was extremely deaf. In contrast, the husband was a man of business ability who had accumulated considerable property.

The Court noted that the husband admitted that he was never domiciled in Arkansas and held that the evidence supported the trial court's finding that he had "procured the decree from the Arkansas court by the fraud practiced upon that court by claiming a domicile sufficient to give the court jurisdiction . . . ." *Brasier*, 200 P.2d at 431. Further noting that domicile was necessary under Arkansas law for the granting of a divorce, the Court upheld the trial court's refusal to recognize the Arkansas decree.

Under *Sherrer* and *Durfee, supra*, the right to relitigate an issue determined by a sister state depends on the right to relitigate the question in the rendering state. These cases are relied on, *inter alia*, by the Restatement of Conflict of Laws (Second) when it provides in § 97:

> "[w]hen a court has jurisdiction over the parties, the local law of the State where the judgment was rendered determines, subject to constitutional limitations, whether the parties are precluded from collaterally attacking the judgment on the ground that the court had no jurisdiction over the thing or status involved or lacked competence over the subject matter of the controversy."

While the *Brasier* case does not easily fit such a scheme we cannot say that *Sherrer* overruled *Brasier* since *Sherrer* was cited without comment in *Brasier* (*Sherrer* having been decided a short time before *Brasier*). The distinguishing facts seem to be (1) that the personal jurisdiction acquired over the Oklahoma wife in *Brasier* was acquired by her consent obtained through overreaching or fraud, was not sufficient to support jurisdiction over a non-resident and was not itself litigated; (2) that the husband had committed fraud on the Arkansas court (this might have been a basis for collateral attack in Arkansas although it was not so discussed); and (3) the undenied evidence that neither party was ever, in fact, domiciled in Arkansas.

■ We conclude that our discussion of *Sherrer* and *Durfee* clearly establishes the rule of full faith and credit and that *Brasier* is accordingly consistent by virtue of its special facts. We must, therefore, determine the decisive issue: is the New Mexico decree collateral reviewable for jurisdictional errors according to New Mexico law.

Appellant relies on several New Mexico cases. Having reviewed them all, and having reviewed those cited by Appellee, we believe the case hinges on the proper construction of *Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967). The other cases are clearly distinguishable. We especially believe New Mexico's refusal to recognize Mexican "quickie" divorces draws on considerations not directly relevant in a full faith and credit context. Had those cases arisen in a sister state the full faith and credit clause might have dictated a different result under *Sherrer* and they cannot be said to reflect New Mexico's view of its own judgments.

In *Heckathorn* a wife filed a complaint in New Mexico seeking divorce. Her complaint did not allege domicile or the, then one year, residency requirement. The husband's answer denied the parties residency but the final decree recited the parties were residents but did not mention for what period. Two and one-half years later the husband filed a motion to declare the decree void. In spite of the answer and the decree, the New Mexico court permitted the

husband to prove that he and his wife were in fact California residents at the time of the decree. In the earlier case of *Wallace v. Wallace*, 63 N.M. 414, 320 P.2d 1020 (1958) the Court had held that "since the appellant submitted to the jurisdiction of the court he would not be allowed to attack the decree collaterally in another state." The Court relied on *Sherrer, inter alia,* for this statement so it must be held to mean that appellant could not attack the decree collaterally in another state *because he could not do so where rendered.* In *Gullo v. Brown*, 82 N.M. 412, 483 P.2d 293 (1971) the Court held that a woman's second husband could not challenge the woman's earlier New Mexico divorce because he had no standing and because a Virginia court's determination between the parties that the New Mexico divorce was valid was *res judicata* at least between the parties. It is noteworthy that the New Mexico court took no issue with the propriety of the Virginia court's collateral inquiry into the New Mexico divorce decree. The Court in *Gullo* noted a problem in distinguishing *Heckathorn* but felt it was different because the party attacking the decree in *Heckathorn* "did not participate in procuring the decree." *Gullo,* 483 P.2d at 296. We also note that in *Heckathorn* a collateral inquiry was permitted as it apparently was in the Virginia aspect of the *Gullo* case.

And, finally, we find *Heckathorn* cited in *Chavez v. County of Valencia*, 86 N.M. 205, 521 P.2d 1154, 1158 (1974) for the proposition that an attack on subject matter jurisdiction "may be made by a collateral attack in the same or other proceedings long after the judgment has been entered."

Our development of the New Mexico caselaw is less than decisive. We do believe it is clear, however, that the New Mexico courts are more inclined to permit collateral attack on a divorce decree allegedly void for lack of domicile and the requisite residency than some courts, even where an intervening marriage has occurred as here and in *Heckathorn.* See *Heckathorn*, 423 P.2d at 412. Consequently, we hold that the decree could be re-examined in New Mexico for a determination of its jurisdictional basis. Although we are not eager to permit litigation of a matter that Appellant could have raised in the New Mexico proceedings we also have no interest in giving an effect to a foreign divorce decree which is not recognized by the courts of the rendering state. We also see no basis for extending comity to a decree which is reviewable where rendered.

The case must be remanded for further proceedings to determine whether either party met the domiciliary and residency requirements for divorce in New Mexico. If so, the New Mexico decree must be recognized and if not, it cannot be recognized because it is void where rendered.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BOX, P. J., and REYNOLDS, J., concur.