STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Timothy Scott Bailey SMITH, Sr.,
Defendant-Appellant.†

Supreme Court

*No. 2003AP1698–CR. Oral argument January 7, 2005.
—Decided July 6, 2005.*

2005 WI 104

(Also reported in 699 N.W.2d 508.)

† Motion for reconsideration denied 9-30-05.

For the plaintiff-respondent-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Patrick M. Donnelly,* assistant state public defender.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. The State of Wisconsin requests review of a published decision of the court of appeals, *State v. Smith,* 2004 WI App 116, 275 Wis. 2d 204, 685 N.W.2d 821. The court of appeals reversed a judgment of the circuit court for Green County, the Honorable James R. Beer, presiding, convicting Timothy Smith, Sr. of two felony counts of failure to pay child support, contrary to Wis. Stat. § 948.22(2) (2001–02).[1] The State argues that the court of appeals erred in concluding that the circuit court violated the constitutional principles articulated in *United States v. Gaudin,* 515 U.S. 506 (1995), by declining to submit a question to the jury on whether child support was ordered by a "court of competent jurisdiction," as used in § 948.22(1)(a). The State also argues that the court of appeals erred in concluding that the

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. The petitioner was charged under Wis. Stat. § 948.22(2) for conduct that allegedly occurred during two different time periods: (1) between July 1, 1996 and August 18, 1997 and (2) between February 17, 1998 and July 2, 1999. The 2001–02 version of § 948.22(1)(a) and (2) is the same as the prior versions in effect during those time periods in all respects material to this review. *Compare* § 948.22(1)(a) and (2) (2001–02) *with* § 948.22(1)(a) and (2) (1999–00), § 948.22(1)(a) and (2) (1997–98), *and* § 948.22(1)(a) and (2) (1995–96).

circuit court erroneously exercised its discretion in admitting a copy of a certified copy of a Maine court's child support order.

¶ 2. We conclude that whether a court of competent jurisdiction issued the child support order underlying a prosecution for the crime of failure to pay child support is not an element of that crime. Therefore, the constitutional principles discussed in *Gaudin* were not implicated when the circuit court declined to submit a question to the jury in that regard. In addition, we conclude that the circuit court did not erroneously exercise its discretion in admitting Exhibit 3, a copy of a certified copy of the Maine court's child support order, as it was admissible pursuant to Wis. Stat. § 909.015(1) and (7). Accordingly, we reverse the decision of the court of appeals and affirm the judgment of the circuit court.

## I. BACKGROUND

¶ 3. Timothy Smith ("Smith") and Denise Smith were married in Connecticut in 1977. They had three children. In 1989, they were divorced by a district court in Waldo County, Maine. The divorce judgment did not order Smith to pay child support.

¶ 4. Denise Smith and the children subsequently moved to Wisconsin. In February 1992, a Green County child support case manager filed a petition for child support against Smith on Denise Smith's behalf in the circuit court for Green County. The petition was later transmitted to the Maine Department of Human Services, pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA"). On October 1, 1992, Smith met with an employee of the Maine Department of Human Services at the Sagadahoc County courthouse,

61

and on the same day, he stipulated to the superior court of Sagadahoc County, Maine's order requiring him to pay $68 per week in child support.

¶ 5. On October 12, 1999, Smith was charged in Green County with two felony counts of failure to pay child support, contrary to Wis. Stat. § 948.22(2), based on allegations that he had not paid child support between July 1, 1996 and August 18, 1997 and again between February 17, 1998 and July 2, 1999.

¶ 6. In pretrial motions and argument, Smith asked the circuit court to conclude that the 1992 Maine court order was invalid. He asserted various reasons for the order's alleged invalidity: (1) it was issued by a court in Sagadahoc County, rather than a court in Waldo County; therefore, it was not issued by a court of competent jurisdiction; (2) his agreement to pay $68 per week in child support was the result of his meeting with an employee of the Maine Department of Human Services, whom Smith contended had no authority to "prosecute" the URESA petition; therefore, the order was invalid; and (3) the Maine court order did not state under which provision of Maine or federal law it was proceeding upon; therefore, it was not a lawful order. Smith asserted these attacks on the Maine order were appropriate because the third element necessary to prove a Wis. Stat. § 948.22(2) violation is that he knew or reasonably should have known that he was legally obligated to pay child support. Smith contended that because he did not believe the order was valid, that affected his state of mind in regard to the third element. Therefore, the question of the order's validity was a proper subject for the jury.[2]

---

[2] Smith has never contended that the Maine court order did not direct him to pay support for his children. Rather, he has

¶ 7. The prosecutor characterized Smith's theories as a disguised collateral attack on the Maine order, an attack he argued should not be permitted because Smith pursued a remedy in the Maine courts. The prosecutor pointed out that Smith admitted that once the support order began to be enforced, he had challenged it in Maine courts, but after losing, he did not complete an appeal. The circuit court concluded that whether the Maine order was valid was a question for the court. The court concluded that it would give "full faith and credit" to the Maine order, which the court determined was a legal question, and it refused to permit Smith to "collaterally attack" the order.[3]

¶ 8. The case was tried before a jury. At trial, Smith shifted his method of attacking the Maine court order somewhat by asking the court to instruct the jury that it was required to find, as an element of the offense, that a court of competent jurisdiction issued the October 1, 1992 child support order. The circuit court declined, concluding that the question of whether the Maine child support order was issued by a court of competent jurisdiction was a legal question that the court had already determined. Additionally, Smith objected to the admission of Exhibit 3, a copy of a certified copy of the Maine child support order, arguing that the document had not been properly authenticated. The circuit court overruled that objection as well.

¶ 9. The jury found Smith guilty of both counts of failure to pay child support, and the circuit court sentenced Smith and filed a judgment of conviction.

contended that the court that did so used its authority improperly for the reasons set out above.

[3] From this discussion, it is unclear whether the circuit court is referring to the original Maine order, the judgment holding that order valid or both Maine decisions.

Smith appealed the judgment, and the court of appeals reversed. The State then petitioned this court for review, which we granted.

## II. DISCUSSION

### A. Constitutional Challenge

¶ 10. The court of appeals relied on the United States Supreme Court's decision in *Gaudin* in reaching its conclusion that the circuit court violated Smith's constitutional rights by declining to submit a jury question about whether a court of competent jurisdiction had ordered him to pay child support. In *Gaudin,* the Supreme Court explained that the Fifth and Sixth Amendments to the United States Constitution[4] "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id.* at 510; *see also In re Winship,* 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the

---

[4] The Fifth Amendment to the United States Constitution provides in relevant part:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger . . . .

The Sixth Amendment to the United States Constitution provides in relevant part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him . . . .

accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). We similarly have held that "where the finder of fact is a jury, rather than a judge, proof of all essential elements must be tendered to the jury." *State v. McAllister,* 107 Wis. 2d 532, 533, 319 N.W.2d 865 (1982) (citations omitted).

¶ 11. In *Gaudin,* the defendant had been charged with making false statements on federal loan documents.[5] *Gaudin,* 515 U.S. at 508. The parties did not dispute that the "materiality" of those statements was an element of that offense and that the government bore the burden of proving "materiality." *Id.* at 509. Rather, in *Gaudin,* the parties disputed whether the element of "materiality" must be submitted to the jury for determination. *Id.* The government argued, in part, that the question of "materiality" is a legal question and as such, a question for the court, not the jury, to determine. *Id.* at 511. However, the Supreme Court held that the determination of "materiality" was a mixed question of fact and law. *Id.* at 512. The Supreme Court then concluded that all elements of a crime must go to the jury, even those elements that involve a mixed

---

[5] The defendant had been charged with violating 18 U.S.C. § 1001 (1988), which provided:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a *material fact,* or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

*United States v. Gaudin,* 515 U.S. 506, 509 (1995) (quoting 18 U.S.C. § 1001) (emphasis added).

65

question of fact and law. Accordingly, the Supreme Court held that the jury should have determined whether the defendant's statements were "material." *Id.* at 512–14.

¶ 12. In the present case, the posture of the question differs from that in *Gaudin* because Smith and the State dispute whether the question at issue, i.e., whether a "court of competent jurisdiction" issued the Maine child support order, is an element of the crime of failure to pay child support. Because we determine that the question of whether a court of competent jurisdiction ordered Smith to pay child support is not an element of the crime at issue, we also conclude that the constitutional principles articulated in *Gaudin* are not implicated.

1. Standard of review

■

¶ 13. Because determination of the statutory elements of a crime is a question of law, our review is de novo. *State v. Ruesch,* 214 Wis. 2d 548, 552–53, 571 N.W.2d 898 (Ct. App. 1997) (citation omitted).

2. Elements of the crime

¶ 14. In *McAllister,* as in the present case, we were asked to determine the "essential elements" of a crime, and we were asked to do so for the same purpose as in the present case, that is, to decide whether a circuit court had failed to submit an element to the jury for determination, thereby violating the defendant's right to have "proof of all essential elements . . . tendered to the jury." *McAllister,* 107 Wis. 2d at 533. We began our analysis in *McAllister* by noting the definition of "crime" provided for by the legislature in Wis.

Stat. § 939.12. *Id.* at 535. Section 939.12 in relevant part provides, "*A crime is conduct* which is prohibited by state law and punishable by fine or imprisonment or both." (Emphasis added.) Then, to determine the elements of the crime in question in *McAllister,* we proceeded to examine the statute pursuant to which the defendant had been convicted in order to determine what *conduct* the statute prohibited,[6] noting that the ordinary sense of the meaning of the word "element" is "the incidents of conduct giving rise to the prosecution," *McAllister,* 107 Wis. 2d at 535, 538.

¶ 15. Here, too, we examine the statute providing for the crime, Wis. Stat. § 948.22(2), to determine the elements of the crime of failure to pay child support, and we focus on the conduct that is prohibited therein. Section 948.22(2) in pertinent part provides, "Any person who intentionally fails for 120 or more consecutive days to provide spousal, grandchild or child support which the person knows or reasonably should know the person is legally obligated to provide is guilty . . . ." On the face of § 948.22(2), the elements of this crime are: (1) an intentional failure to provide child support; (2) that continued for 120 or more consecutive days; and (3) actual or constructive knowledge of the legal obligation to provide support. The Jury Instructions

---

[6] In *State v. McAllister,* 107 Wis. 2d 532, 319 N.W.2d 865 (1982), the defendant had been convicted of violating Wis. Stat. § 346.63(1), which then provided, "No person may drive or operate a motor vehicle while under the influence of an intoxicant or a controlled substance." *Id.* at 532 n.1 (quoting § 346.63(1)). We concluded that the two elements of the offense that needed to be proven to sustain a judgment of conviction and submitted to the jury were: "(1) driving or operating a motor vehicle, and (2) doing so while under the influence of an intoxicant." *Id.* at 535.

Committee has come to the same conclusion, proposing these same three elements in Wisconsin Jury Instructions—Criminal 2152.[7]

¶ 16. A requirement that a court of competent jurisdiction has issued the child support order is found in the definitions section of the statute, Wis. Stat. § 948.22(1). Section 948.22(1)(a) provides:

> 'Child support' means an amount which a person is ordered to provide for support of a child by a court of competent jurisdiction in this state or in another state, territory or possession of the United States, or, if not ordered, an amount that a person is legally obligated to provide under s. 49.90.

This provision, whether a court of competent jurisdiction issued the child support order, focuses on the characteristics of a court. By contrast, elements of a crime generally are focused on a defendant's conduct. *See McAllister,* 107 Wis. 2d at 535, 538. For example, in order to violate § 948.22(2), a defendant must intentionally fail to pay, the failure to pay must continue for 120 consecutive days and the defendant must have known or reasonably should have known of the obliga-

---

[7] The Wisconsin Criminal Jury Instructions Committee has articulated the elements of Wis. Stat. § 948.22 as: "1. The defendant intentionally failed to provide (spousal) (child) support . . . . 2. The failure to provide support continued for 120 or more consecutive days. 3. The defendant (knew) (reasonably should have known) that (he) (she) was legally obligated to provide the (spousal) (child) support." Wis JI—Criminal 2152 (footnote omitted).

We have recognized that the work of the Wisconsin Criminal Jury Instructions Committee, while not precedential, may be persuasive. *State v. Olson,* 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661 (1993).

tion to pay. All of the acts described in subsection (2) focus on the conduct of the defendant, while the phrase relied on by Smith focuses on the characteristics of a court. This leads us to conclude that the phrase is not an element of the crime of failure to pay child support under § 948.22(2). Therefore, the circuit court was not required to give the jury instruction Smith requested in order to satisfy the constitutional requirement that each element of the crime for which a defendant is charged be tendered to the jury. *See Gaudin,* 515 U.S. at 510; *McAllister,* 107 Wis. 2d at 532.

¶ 17. Our inquiry, however, does not end there. Smith argues that in Wis. Stat. § 948.22(1)(a), "court of competent jurisdiction" encompasses the concepts of personal jurisdiction, subject matter jurisdiction and a court's "competency," while the State counters that the phrase refers only to a court's subject matter jurisdiction.

¶ 18. To briefly review, subject matter jurisdiction refers to the power of a court to decide certain types of actions. *United States v. Morton,* 467 U.S. 822, 828 (1984); *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 336, 555 N.W.2d 640 (Ct. App. 1996); 21 C.J.S. *Courts* § 10 (1990) ("Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong."). Personal jurisdiction, on the other hand, refers to a court's power "to enter a judgment in personam against an individual party." *Kohler,* 204 Wis. 2d at 336; *accord* 21 C.J.S. *Courts* § 11 ("Jurisdiction of the person is the power of a court to bring before it the person to be affected by the judgment . . . and to render a judgment binding on such person."). However, a court's "competency," as the term is understood in Wisconsin, is not jurisdictional at all,

69

but instead, is defined as "the power of a court to exercise its subject matter jurisdiction" in a particular case. *Kohler,* 204 Wis. 2d at 337. For example, we have explained that a court may lose its "competency" to adjudicate a particular case if it fails to comply with a variety of statutory procedures, including certain time limitations. *Village of Trempealeau v. Mikrut,* 2004 WI 79, ¶¶ 12–13, 273 Wis. 2d 76, 681 N.W.2d 190.

¶ 19. The legislature has used the phrase "court of competent jurisdiction" in numerous Wisconsin statutes.[8] The parties have not pointed to a single Wisconsin appellate court decision that interprets this phrase in a Wisconsin statute, and our review of Wisconsin case law also has not revealed such a decision.[9]

¶ 20. However, even if we were to conclude, which we do not, that the phrase "court of competent jurisdiction" encompasses one or any number of the characteristics proposed by the parties (i.e., subject matter jurisdiction, personal jurisdiction or competency), the presence or absence of these characteristics is a question of law, to be determined by a court. *See Van Deurzen v. Yamaha Motor Corp. USA,* 2004 WI App 194, ¶ 9, 276 Wis. 2d 815, 688 N.W.2d 777 (in regard to subject matter jurisdiction); *see Marsh v. Farm Bureau*

---

[8] Text searches of electronic databases of Wisconsin statutes indicate that the phrase "court of competent jurisdiction" is used 175 times in 153 different Wisconsin statutes.

[9] The court of appeals has considered the phrase "court of competent jurisdiction" in the context of deciding that a forum selection clause of a guaranty conferred the right to exercise personal jurisdiction by consent. *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 337, 555 N.W.2d 640 (Ct. App. 1996). The *Kohler* decision concerned contract law and did not interpret the phrase "court of competent jurisdiction" in a statute. *Id.*

*Mut. Ins. Co.*, 179 Wis. 2d 42, 52, 505 N.W.2d 162 (Ct. App. 1993) (in regard to personal jurisdiction); *State v. Bollig*, 222 Wis. 2d 558, 563, 587 N.W.2d 908 (Ct. App. 1998) (in regard to competence). The only exception would be if Smith had alleged historical facts inconsistent with the Maine court's jurisdiction that the State disputes. However, we are not presented with any factual disputes about which court actually issued the child support order.[10]

¶ 21. And finally, we agree with the circuit court's conclusion that Smith's requested jury instruction was an impermissible collateral attack on the validity of the Maine court order in a proceeding to enforce that order. As has been explained:

> A collateral attack is an "attempt to avoid, evade or
> deny the force and effect of a judgment in an indirect

---

[10] Here, while Smith characterizes the "court of competent jurisdiction" question in his case as a factual dispute in his briefing to this court, he has not identified any historical facts regarding any incident of jurisdiction that are in dispute. Smith does explain that at the circuit court, he argued that a superior court of Sagadahoc County, Maine was not a court of competent jurisdiction to issue the child support order pursuant to a URESA request because a district court in Waldo County, Maine had earlier granted the divorce decree without ordering child support. This would generally be deemed an issue of subject matter jurisdiction, as it regards the power of a particular court to hear and determine a particular type of case. The parties do not dispute that a district court in Waldo County, Maine granted the divorce decree. They also do not dispute that a superior court in Sagadahoc County, Maine issued the child support order. As such, there is no dispute of historical fact. All that is at issue, is which court *should have* issued the child support order, which is a legal question. Such a legal question regarding jurisdiction is for court, not jury, determination.

manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it."

*State v. Bouzek,* 168 Wis. 2d 642, 644–45, 484 N.W.2d 362 (Ct. App. 1992) (quoting *Schramek v. Bohren,* 145 Wis. 2d 695, 713, 429 N.W.2d 501 (Ct. App. 1988)). *Bouzek* arose from enforcement proceedings on a harassment injunction. Initially, Bouzek had consented to the issuance of the injunction and negotiated a plea agreement wherein he pled guilty to the violation of the injunction. *Bouzek,* 168 Wis. 2d at 643. After sentencing, he sought to vacate his conviction on the grounds that the underlying injunction was improperly issued. *Id.* The court of appeals did not address the merits of Bouzek's arguments because it concluded that the argument constituted an impermissible collateral attack. *Id.* at 644.

¶ 22. Here, Smith did not plead guilty to failing to pay child support. However, he stipulated to the Maine court's order when it was entered, and after it began to be enforced, he participated in Maine courts to challenge the order's validity. He lost his challenge in Maine and did not pursue an appeal of that judgment. Therefore, the Maine court judgment that is dispositive for purposes of our review is the judgment that held that the Maine court child support order was validly issued. The question of the subject matter jurisdiction of the Maine court decisions is now barred by claim preclusion because when the Maine court held that the child support order was enforceable, that determination necessarily included the determination that the court had subject matter jurisdiction to issue the order. *See Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 550,

525 N.W.2d 723 (1995) (claim preclusion determines all matters litigated). As Restatement (Second) of Judgments explains:

> Whether a court whose jurisdiction has been invoked has subject matter jurisdiction of the action is a legal question that may be raised by a party to the action or by the court itself. When the question is duly raised, the court has the authority to decide it. A decision of the question is governed by the rules of res judicata[11] and hence ordinarily may not be relitigated in a subsequent action.

Restatement (Second) of Judgments, § 11 cmt. c (1982). Wisconsin follows the Restatement's determination that a decision on the question of subject matter jurisdiction is subject to principles of claim preclusion. *See H.N.T. v. State,* 125 Wis. 2d 242, 250–51, 371 N.W.2d 395 (Ct. App. 1985). Therefore, while we agree that an order entered without jurisdiction is void and may be challenged at any time, *see Neylan v. Vorwald,* 124 Wis. 2d 85, 99, 368 N.W.2d 648 (1985), Smith did challenge the child support order in Maine. The resulting judgment confirmed the validity of the child support order. Because he did not appeal the judgment, the principles of claim preclusion are operative to settle the question of whether the child support order was issued by a court of competent jurisdiction.[12] *See State v. Donohue,* 11 Wis. 2d 517, 523–24, 105 N.W.2d 844 (1960). Accord-

---

[11] Wisconsin's nomenclature for res judicata is "claim preclusion." *Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 549–50, 525 N.W.2d 723 (1995).

[12] The dissent misses the import of the Maine court judgment that held the child support order was valid. Instead of examining the effect of that judgment, the dissent sets out principles for collaterally attacking a void judgment. Dissent,

ingly, the circuit court correctly denied Smith's requested jury instruction.

¶ 23. In sum, whether a court of competent jurisdiction ordered a defendant to pay child support is not an element of the crime of failure to pay child support and therefore, a question in that regard need not have been submitted to the jury as an element of the crime. Further, because Smith has not identified a historical fact inconsistent with an incident of the Maine court's jurisdiction that he and the State dispute, whether a court of competent jurisdiction ordered him to pay child support was a purely legal question for the court to determine.

B. Admissibility of Evidence

¶ 24. The State also challenges the court of appeals' reversal of the circuit court's decision to admit Exhibit 3, a copy of a certified copy of the Sagadahoc County, Maine court order. The order requires Smith to pay $68 per week in child support, beginning October 1, 1992, and it is signed both by a justice of the superior court in Maine and by Smith, attesting to his agreement with the order.

¶ 25. At trial, an employee of the clerk's office of the circuit court for Green County, Jean Cook, testified. Cook explained that before working for the clerk of court's office, she was a child support case manager, and in that capacity she assisted Denise Smith in preparing and filing a petition for child support under federal URESA law. Cook described the URESA petition process that was in place in 1992 and followed in Denise Smith's case, which started with a petition being pre-

¶¶ 45–46. But the judgment is not void, and the child support order's validity is confirmed by that judgment.

pared in Green County and then approved by the circuit court for Green County and sent to Maine. Later, on February 1, 1993, a certified copy of the Maine order was received and placed in the file of the circuit court for Green County, numbered 92–FA-021.

¶ 26. In the course of her testimony, Cook located the certified copy of the Maine order in the circuit court's case file 92–FA-021. She identified the official raised seal of the Maine clerk of court's office, as well as an attestation from that office that the order was a true copy. She also testified that she did not receive a judicial certificate indicating that the attestation was in proper form. Additionally, she compared Exhibit 3 and the certified copy of the Maine order in file 92–FA-021, and she testified that Exhibit 3 was a true and accurate copy of the certified copy of the Maine order.

¶ 27. Smith argues that Exhibit 3 should not have been admitted into evidence because it did not comply with 28 U.S.C. § 1738 (2002).[13] The State counters that the exhibit did not need to comply with that federal law and was admissible under Wisconsin statutes, including Wis. Stat. § 909.015(1) and (7). We agree.

1. Standard of review

¶ 28. "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698.

---

[13] All further references to the United States Code are to the 2002 version unless otherwise noted.

### 2. Authentication

¶ 29. Smith argues that the authentication provision of 28 U.S.C. § 1738 must be met for a Wisconsin court to admit an out-of-state court order into evidence. 28 U.S.C. § 1738 provides in relevant part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, *together with a certificate of a judge of the court that the said attestation is in proper form.*

(Emphasis added.) Smith contends that, pursuant to 28 U.S.C. § 1738, the Maine court order should not have been admitted without a judge's certification that the Maine court's clerk's attestation was in proper form.

¶ 30. However, as other courts have recognized, 28 U.S.C. § 1738 does not provide the exclusive basis for authenticating a sister state's court order. *See Donald v. Jones,* 445 F.2d 601, 606 (5th Cir. 1971); *State v. Wolfskill,* 421 S.W.2d 193, 195–96 (Mo. 1967); *Price v. Price,* 447 N.E.2d 769, 772 (Ohio Ct. App. 1982); *Murphy v. Murphy,* 581 P.2d 489, 492 (Okla. Ct. App. 1978). As the Fifth Circuit Court of Appeals explained in *Donald:*

> 28 U.S.C. 1738 . . . was enacted to implement the full, faith, and credit clause of the United States Constitution by providing a way of exemplifying the records of judicial proceedings held in one state so that such records would be admissible in later judicial proceedings held in another state. Thus, this statute merely means full, faith, and credit must be given if certain requirements are met. However, *evidence of judicial*

> *proceedings may be admissible if less is shown than the statute requires when it conforms to the rules of evidence of the state where the trial is being held.*

*Donald,* 445 F.2d at 606 (emphasis added). Accordingly, we are not required to apply the authentication requirement of 28 U.S.C. § 1738 to the Maine court order at issue here, and we instead turn to the authentication requirements found in Wisconsin statutes.

¶ 31. Wisconsin Stat. § 909.01 provides, "The requirements of authentication or identification as a condition precedent to admissibility are *satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.*" (Emphasis added.) Wisconsin Stat. § 909.015 provides examples of authentication that, while not exclusive, satisfy the requirements of § 909.01. For example, § 909.015(1) provides that the matter in question is what its proponent claims when "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" is presented. Furthermore, § 909.015(7), entitled "Public records or reports," provides another example: "Evidence that a writing authorized by law to be recorded or filed and in fact is recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

¶ 32. Here, the State claimed that Exhibit 3 was a copy of the court order issued in Maine. Cook, an employee of the clerk of circuit court's office, testified that the certified copy of the Maine court order, with the raised seal of that court, was in the circuit court's file for the underlying child support case, 92–FA-021. She compared that certified copy with Exhibit 3 and verified that Exhibit 3 was a copy of the certified copy

of the Maine order. Therefore, she had knowledge, and testified accordingly, that the certified copy of the Maine court order had been found in the public office where an item of its nature is kept and that Exhibit 3 was a copy of that order.

¶ 33. We note additionally that Smith did not object that Exhibit 3 was a copy of the certified copy, rather than the actual certified copy of the Maine order. Regardless, Wis. Stat. § 910.03 provides for admission of a duplicate to the same extent as an original unless circumstances, which are not implicated here, are present. Accordingly, the circuit court did not erroneously exercise its discretion in admitting Exhibit 3.

## III. CONCLUSION

¶ 34. In sum, we conclude that whether a court of competent jurisdiction issued the child support order underlying a prosecution for the crime of failure to pay child support is not an element of that crime. Therefore, the constitutional principles discussed in *Gaudin* were not implicated when the circuit court declined to submit a question to the jury in that regard. In addition, we conclude that the circuit court did not erroneously exercise its discretion in admitting Exhibit 3, a copy of a certified copy of the Maine court's child support order, as it was admissible pursuant to Wis. Stat. § 909.015(1) and (7). Accordingly, we reverse the decision of the court of appeals and affirm the judgment of the circuit court.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 35. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). The majority concludes that

whether a "court of competent jurisdiction" issued a child support order is not an element of the crime of failure to pay child support under Wis. Stat. § 948.22. Majority op., ¶ 2. With this conclusion, I agree. The crime of felony child support contains the following elements: (1) that the defendant intentionally failed to provide child support; (2) that the intentional failure to provide support continued for 120 or more consecutive days; and (3) that the defendant knew or reasonably should have known that he was legally obligated to provide child support. *See* Wis JI—Criminal 2152 (2001); Wis. Stat. § 948.22(1)(a) (2001–02).[1]

¶ 36. The majority then concludes that because proof that a court of competent jurisdiction issued a child support order is not an element of the offense of failure to pay child support, the circuit court was not required to give the jury instruction requested by Smith in order to satisfy the constitutional requirement that each element of the crime for which a defendant is charged be tendered to the jury. Majority op., ¶ 16. The second conclusion does not follow the first. Even though there is no separate element for a court of competent jurisdiction, Smith has nonetheless been deprived of jury consideration of the first and third elements of the offense as they relate to the validity of a child support order itself. Accordingly, while I agree that the decision of the court of appeals must be reversed with respect to its handling of the sufficiency of the evidence claim,[2] I respectfully dissent from that portion of the majority opinion that affirms the trial court.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version.

[2] The court of appeals' decision with respect to sufficiency of the evidence was premised on its erroneous conclusion that the

¶ 37. Prior to trial for two counts of failure to pay child support, Timothy Smith challenged the validity of the Maine child support order he was accused of violating on multiple grounds. First, because his divorce took place in the district court of Waldo County, Maine, Smith argued that the Sagadahoc County Superior Court in Maine that issued the child support order was 'not a "court of competent jurisdiction" as that term is used in Wisconsin's failure to pay child support crime.[3] *See* Wis. Stat. § 948.22(1)(a). Second, he argued that the Maine Department of Human Services had no authority to prosecute the Uniform Reciprocal Enforcement of

State had to prove as one of the elements that a court of competent jurisdiction issued an order requiring the defendant to provide child support. *State v. Smith*, 2004 WI App 116, ¶ 9, 275 Wis. 2d 204, 685 N.W.2d 821. Because the State failed to present the jury with any evidence as to the laws of Maine, or give to the jury sufficient facts from which it could have resolved the questions of subject matter and personal jurisdiction concerning whether the court which issued the order was one of competent jurisdiction, the court of appeals reasoned that the evidence was insufficient. *Id.*, ¶ 33. Because that court mischaracterized the elements that had to be proved, it similarly mischaracterized the evidence needed by the State to prove its case. I would reverse the court of appeals' decision with respect to sufficiency of the evidence.

[3] Without assessing the validity of Smith's argument, I note that Maine's judicial system is comprised of a supreme court and two different trial courts, superior courts, and district courts. Me. Rev. Stat. Ann. tit. 4, §§ 1–57 (West 2004) (supreme court); Me. Rev. Stat. Ann. tit. 4, §§ 101–121 (West 2004) (superior courts); Me. Rev. Stat. Ann. tit. 4, §§ 151–184 (West 2004) (district courts). Within the district court is a family division. Me. Rev. Stat. Ann. tit. 4, § 183 (West 2004). According to the family division's rules, the family division has jurisdiction over child support. Rules for the Family Division of the Maine District Court, I.A.

Support Act (URESA) petition, rendering the child support order invalid. Third, Smith argued that the Maine child support court order was unlawful because it did not state on which provision of law it was based.

¶ 38. Smith specifically argued that his challenges to the Maine child support order went to the third element necessary to prove the charges against him, namely, that he knew or reasonably should have known that he was legally obligated to pay child support. He argued that if he did not believe the order to be valid, then he lacked the intent necessary to constitute the third element. Thus, Smith argued, the question on the validity of the child support order was a fact question for the jury because it ultimately determines whether he had the requisite criminal state of mind.[4]

¶ 39. The trial court concluded that whether the Maine child support order was valid was a question for the court, not the jury. The court gave "full faith and credit" to the Maine order, and refused to permit Smith to collaterally attack the order. The trial court further refused to instruct the jury on the issue or to allow the defendant to present direct evidence on the issue. *State v. Smith*, 2004 WI App 116, ¶ 3, 275 Wis. 2d 204, 685 N.W.2d 821. The trial court also refused to instruct the jury that it was required to find, as a separate element of the offense, that a court of competent jurisdiction issued the child support order. The court only allowed Smith to present evidence as to the general concepts involved with jurisdiction, in addition to why he believed he was not legally obligated to comply with the child support order. *Id.*

---

[4] Smith currently argues that if the Maine Superior Court lacked the authority to issue the child support order for any reason, a criminal charge cannot stand.

¶ 40. The court of appeals reversed the trial court, concluding that there are four elements to this offense, including that a court of competent jurisdiction issued the child support order. *Id.,* ¶ 9. This court's majority correctly determines that there are only three elements, those stated in Wis JI—Criminal 2152. Majority op., ¶ 15. With that conclusion in hand, however, both decisions miss the import of Smith's argument.

¶ 41. As noted above, the crime of felony child support contains the following elements: (1) that the defendant intentionally failed to provide child support; (2) that the intentional failure to provide support continued for 120 or more consecutive days; and (3) that the defendant knew or reasonably should have known that he was legally obligated to provide child support. *See* Wis JI—Criminal 2152. As is evident, for Smith to have committed this offense, he had to intentionally fail to provide *child support,* which he knew or reasonably should have known that he was legally obligated to provide.[5] The State had to prove that Smith had actual or constructive notice of a legal obligation to provide child support. Whether such an obligation actually existed, therefore, cuts to the heart of Smith's legal defense.

¶ 42. To begin with, "child support" is defined in pertinent part as "an amount which a person is ordered to provide for support of a child by a court of competent jurisdiction in this state or in another state . . . ." Wis. Stat. § 948.22(1)(a). In order to intentionally fail to provide child support, a court of competent jurisdiction had to issue such an order. Otherwise, by definition, no offense could have been committed. Child support is part of the first element of this offense. One cannot

---

[5] The second element is not at issue in this case.

intentionally fail to pay that which does not exist. Absent a valid order, Smith simply has no legal obligation whatsoever.

¶ 43. The Jury Instructions Committee certainly recognized the fact that the question of whether a valid support order existed might come into play. In defining the first element concerning the intentional failure to provide support, the Committee noted as follows: "For purposes of instructing the jury, the Committee concluded that definition of 'support' would rarely be necessary in the usual case. Should the facts present an issue, the statutes referenced in subs. (1)(a) and (c) may offer some guidance . . . ." *See* Wis JI—Criminal 2152 cmt. n.4. Smith attempted to raise facts that would present the issue, but was thwarted by the trial court. Smith set forth his theory that the Maine order was not valid, but was not allowed to present any evidence to the jury. He requested the court to define "child support," consistent with the Committee's note that the statute may offer some guidance, but the trial court declined to do so. In short, he was precluded from presenting a defense against one of the essential elements that the State had to prove: whether he intentionally failed to provide *child support.*

¶ 44. The trial court did allow Smith to present evidence as to why he believed he was not legally obligated to comply with the child support order. Without being able to challenge the order itself, and without child support being defined for the jury, his defense to the third element was likewise completely undercut. There was simply no way for the jury to understand the basis of his challenge regarding his knowledge, actual or constructive, of an obligation that he posited did not exist. The jury was not informed that the order had to be issued by a court of competent jurisdiction.

83

¶ 45. Jurisdictional challenges to the validity of foreign judgments are a legitimate matter of inquiry whenever the enforcement of the foreign judgment is sought. *Hansen v. McAndrews,* 49 Wis. 2d 625, 630, 183 N.W.2d 1 (1971). While the general rule precludes collateral attacks of a valid judgment,[6] when a court acts in excess of its jurisdiction its orders and judgments are void and may be challenged at any time. *Kohler Co. v. DILHR,* 81 Wis. 2d 11, 25, 259 N.W.2d 695 (1977). The fact that a party is dilatory or lackadaisical in his or her efforts to overturn the judgment is irrelevant. *Id.* " 'It is the duty of the court to annul an invalid judgment.' " *Id.* (quoting *Halbach v. Halbach,* 259 Wis. 329, 331, 48 N.W.2d 617 (1951)).

¶ 46. Void judgments cannot be validated by consent, ratification, waiver, or estoppel. *Kohler,* 81 Wis. 2d at 25. Void judgments may also be attacked collaterally, *id.,* including foreign judgments. *See West v. West,* 82 Wis. 2d 158, 262 N.W.2d 87 (1978).[7]

---

[6] *Kehl v. Britzman,* 258 Wis. 513, 516, 46 N.W.2d 841 (1951). Accordingly, I agree with the majority that Smith is precluded from challenging either the authority of the Maine Department of Human Services to prosecute the URESA petition or the fact that the Maine child support order was unlawful because it did not state on which provision of law it was based. Majority op., ¶¶ 21—22. I respectfully disagree with the majority's collateral attack analysis with respect to jurisdictional challenges, however.

[7] This court has previously indicated that if a jurisdictional issue has been fully litigated in a foreign court and is not subject to collateral attack in that state, then the forum court is bound by the judgment as to jurisdiction. *Hansen v. McAndrews,* 49 Wis. 2d 625, 630, 183 N.W.2d 1 (1971). Nevertheless, this court noted exceptions to this rule that included relief from a void judgment which appears or purports to be valid, particularly when due process is violated. *Id.* at 630 n.5, 631 and 637. Thus,

¶ 47. Smith has directly challenged the authority of the Sagadahoc Superior Court to issue the child support order. Accordingly, he was not precluded from collaterally attacking the validity of that order if that court acted in excess of its jurisdiction. By not allowing Smith to present evidence in support of his challenge, and by refusing to instruct the jury as to the definition of "child support," the trial court effectively impaired Smith's right to defend against the first element of the offense.

¶ 48. Due process protects a person from conviction except "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 365 (1970); *see also State v. Smith*, 117 Wis. 2d 399, 415, 344 N.W.2d 711 (Ct. App. 1983). The State had the burden of proving that Smith intentionally failed to provide child support in this matter, as well as his actual or constructive knowledge of his legal obligation to provide that support. The trial court failed to correctly instruct the jury with respect to the first element by refusing to define "child support."[8] Omissions in jury instructions are subject to a harmless error analysis. *See State v.*

even though Smith failed to follow through with his appeal in Maine, he is not precluded from raising his challenge to the Maine court's jurisdiction here.

[8] It is not unusual to find definitions of essential elements or essential facts in the standard jury instructions. Indeed, the standard instructions are full of such examples. For example, "truant" as part of the third element of the offense is defined in Wis JI—Criminal 2173, Contributing to Truancy. The definitions of "drive" and "operated" are included with respect to the first element throughout the drunk driving and prohibited alcohol concentration instructions. *See* Wis JI—Criminal 2660, etc. "Sexual intercourse" and "sexual contact" are defined throughout the sexual assault instructions with respect to that

*Harvey,* 2002 WI 93, ¶ 6, 254 Wis. 2d 442, 647 N.W.2d 189. I conclude that the error cannot be harmless where, as here, not only was the jury not instructed with respect to the definition of child support, but also the defense was precluded from presenting evidence with respect to the first and third elements.

¶ 49. The majority briefly discusses how the concept of a "court of competent jurisdiction" encompasses the concepts of personal jurisdiction, subject matter jurisdiction, and a court's competency. Majority op., ¶¶ 18–20. As the majority correctly notes, subject matter jurisdiction is the power of the courts to hear and determine cases of the general class to which the proceedings belong. *United States v. Morton,* 467 U.S. 822, 828 (1984); *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 336, 555 N.W.2d 640 (Ct. App. 1996). Personal jurisdiction refers to a court's power to enter a judgment against an individual party. *Kohler,* 204 Wis. 2d at 336. A court's competency is not jurisdictional, but is defined as "the power of a court to exercise its subject matter jurisdiction" in a particular case. *Id.* at 337.

¶ 50. In Wisconsin, Article VII, Section 8 of the Wisconsin Constitution provides that: "[e]xcept as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state." *See also Village of Trempealeau v. Mikrut,* 2004 WI 79, ¶ 8, 273 Wis. 2d 76, 681 N.W.2d 190. Thus, "[n]o circuit court is without subject matter

---

element. *See* Wis JI—Criminal 1200, etc. These examples are not meant to be exhaustive. They are illustrative of the fact that this court and the Jury Instructions Committee have long recognized the importance of defining legal terms to the jury so that it can better understand the elements of the crime charged in fulfilling its decision-making function. The jury should have been so instructed in this case.

jurisdiction to entertain actions of any nature whatsoever." *Mueller v. Brunn,* 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982). *But see State v. Bush,* 2005 WI 103, __ Wis. 2d __, 699 N.W.2d 80 (released this same date). This constitutional rule regarding Wisconsin jurisdiction has not always been in effect, however, as our constitution was amended in 1977 to create a unified court system with original jurisdiction vested wholly in the circuit court. *See Eberhardy v. Cir. Ct. for Wood Co.,* 102 Wis. 2d 539, 550–51, 307 N.W.2d 881 (1981). Prior to that time, jurisdiction existed within the Supreme Court, circuit courts, probate courts, county courts, municipal courts, and with justices of the peace. *See* Wis. Const. art. VII, § 8 (1975) and Wis. Stat. ch. 252 (1975) (circuit courts);[9] Wis. Stat. ch. 253 (1975) (county courts); Wis. Const. art. VII, § 2 (municipal courts);[10] Wis. Const. art. VII, § 16 (1975) (tribunals of

---

[9] Wisconsin Const. art. VII, § 8 (1975), stated:

The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions.

[10] Wisconsin Const. art. VII, § 2 (1975), stated in part:

The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, and courts of probate. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and may authorize the establishment of inferior courts in the several counties, cities, villages or towns, with limited civil and criminal jurisdiction. Provided, that the jurisdiction which may be vested in municipal courts shall not exceed in their respective municipalities

conciliation);[11] Wis. Const. art. VII, § 15 (1965) (justices of the peace);[12] Wis. Const. art. VII, § 14 (judges of probate).[13] Our current jurisprudence regarding subject matter jurisdiction and a court's competence to act

that of circuit courts in their respective circuits as prescribed in this constitution; and that the legislature shall provide as well for the election of judges of the municipal courts as of the judges of inferior courts, by the qualified electors of the respective jurisdictions. The term of office of the judges of the said municipal and inferior courts shall not be longer than that of the judges of the circuit courts.

[11] Wisconsin Const. art. VII, § 16 (1975), provided:

The legislature shall pass laws for the regulation of tribunals of conciliation, defining their powers and duties. Such tribunals may be established in and for any township, and shall have power to render judgment to be obligatory on the parties when they shall voluntarily submit their matter in difference to arbitration, and agree to abide the judgment or assent thereto in writing.

[12] Wisconsin Const. art. VII, § 15 (1965), read:

The electors of the several towns at their annual town meeting, and the electors of cities and villages at their charter elections except in cities of the first class, shall, in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be for 2 years and until their successors in office shall be elected and qualified. In case of an election to fill a vacancy occurring before the expiration of a full term, the justice elected shall hold for the residue of the unexpired term. Their number and classification shall be regulated by law. And the tenure of 2 years shall in no wise interfere with the classification in the first instance. The justices thus elected shall have such civil and criminal jurisdiction as shall be prescribed by law.

[13] Wisconsin Const. art. VII, § 14 (1975), stated:

There shall be chosen in each county, by the qualified electors thereof, a judge of probate, who shall hold his office for two years and until his successor shall be elected and qualified, and whose jurisdiction, powers and duties shall be prescribed by law. Provided, however, that the legislature shall have power to abolish the

88

in furtherance of that jurisdiction may not have been applicable prior to the creation of the unified court system.

¶ 51. Similarly, Wisconsin's unified court system is not necessarily the rule in other jurisdictions. Issues of subject matter jurisdiction and a court's competency to exercise that jurisdiction may carry very different meanings in other states. Smith has every right to put the State to its burden of proof. That includes challenging the order for child support in the first instance.

¶ 52. I agree with the majority that the court of appeals' decision must be reversed as to the sufficiency of evidence claim, but would nevertheless affirm the court of appeals determination that reversal of the trial court is warranted, and remand this matter to the circuit court for a new trial.

¶ 53. For the foregoing reasons, I respectfully concur in part, and dissent in part, and would remand this matter to the circuit court for a new trial.

----

office of judge of probate in any county, and to confer probate powers upon such inferior courts as may be established in said county.

*See also* Wisconsin Const. art. VII, § 2 (1975).