**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 29, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2024AP554-CR
          2024AP556-CR
STATE OF WISCONSIN**

Cir. Ct. Nos.  2021CF1531
          2021CF1532

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

CHRISTOPHER J. SYRRAKOS,

    DEFENDANT-RESPONDENT.

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

KRISTYN A. SHATTUCK,

    DEFENDANT-RESPONDENT.

APPEALS from an order of the circuit court for Waukesha County: WILLIAM J. DOMINA, Judge. *Reversed and causes remanded for further proceedings.*

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

¶1 NEUBAUER, P.J. These consolidated appeals require us to interpret and apply several statutes that regulate hemp in Wisconsin. Hemp and marijuana are variants of the cannabis sativa L. plant species and are distinguished in the law by the level of delta-9-tetrahydrocannabinol (THC) they contain.[1] Hemp, under Wisconsin law, includes cannabis sativa plants and derivatives thereof "with a delta-9-tetrahydrocannibinol concentration of not more than 0.3 percent on a dry weight basis or the maximum concentration allowed under federal law up to 1 percent, whichever is greater." WIS. STAT. § 94.55(1) (2023-24).[2] Items with a higher concentration of THC are controlled substances under Wisconsin law. *See* WIS. STAT. § 961.14(4)(t).

¶2 In 2018, Christopher J. Syrrakos obtained a license from the Wisconsin Department of Agriculture, Trade, and Consumer Protection (DATCP) to process hemp. He owned a retail store where he sold hemp products. Three years later, the State of Wisconsin charged Syrrakos and Kristyn A. Shattuck with violations of Wisconsin's controlled substances law, WIS. STAT. ch. 961, after developing evidence that items sold at Syrrakos's store, and items from the

---

[1] Delta-9-tetrahydrocannibinol "is the primary psychoactive component of cannabis." 7 C.F.R. § 990.1 (2025).

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

residence he and Shattuck shared, contained unlawfully high concentrations of THC. Syrrakos and Shattuck (who did not have a hemp license) moved to dismiss the charges under WIS. STAT. § 961.32(3)(c), which shields a person who violates Wisconsin's hemp statute, WIS. STAT. § 94.55, or a rule promulgated thereunder from prosecution "unless the person is referred to the district attorney for the county in which the violation occurred … by the [DATCP]." Because no such referral had occurred, Syrrakos and Shattuck argued that the circuit court lacked subject matter jurisdiction over the charges against them. The court initially denied the motion, but on reconsideration, a different judge agreed with Syrrakos and Shattuck that § 961.32(3)(c) required a referral from the DATCP and concluded that the absence of such a referral deprived the court of competency to adjudicate the charges.

¶3     The State appeals from the order granting Syrrakos and Shattuck's reconsideration motion and dismissing the charges. It contends that the circuit court erred because the referral requirement in WIS. STAT. § 961.32(3)(c) does not apply where the State charges a person with intentional violations of Wisconsin's controlled substances law. For the reasons explained below, we conclude that Syrrakos and Shattuck are not "person[s] who violate[d WIS. STAT. §] 94.55 or a rule promulgated under [§] 94.55" for the purpose of § 961.32(3)(c). Accordingly, a referral from the DATCP was not required before the State could commence these prosecutions against them, and the absence of such a referral did not deprive the court of competency to adjudicate the charges against them. We therefore reverse the reconsideration order and remand these cases for further proceedings.

## BACKGROUND

### I.  Wisconsin's Regulatory Framework for Hemp

¶4     An overview of Wisconsin's statutes and regulations governing hemp will provide useful context for our analysis of the parties' arguments.  Hemp cultivation and production in the United States dates back to the colonial period, but federal legislation in the 20th century restricted and ultimately banned it.  *See* RYAN LECLOUX, WIS. LEGIS. REFERENCE BUREAU, REGULATING WISCONSIN'S HEMP INDUSTRY 3-4 (2019) [hereinafter LECLOUX], https://docs.legis.wisconsin.gov/misc/lrb/wisconsin_policy_project/wisconsin_policy_project_2_9.pdf.  Congress revived hemp cultivation in the Agricultural Act of 2014, Pub. L. No. 113-79, 128 Stat. 649 (2014), which allowed states to create pilot programs under which hemp could be grown, processed, and sold under limited conditions.  LECLOUX at 4.

¶5     In 2017, the Wisconsin legislature enacted WIS. STAT. § 94.55, which, among other things, directed the DATCP to "create a pilot program to study the growth, cultivation, and marketing of industrial hemp."  *See* 2017 Wis. Act 100, § 2 (creating § 94.55(3) (2017-18)).   Section 94.55 also permitted individuals to "plant, grow, cultivate, harvest, sample, test, process, transport, transfer, take possession of, sell, import, and export industrial hemp in this state to the greatest extent allowed under federal law."  *See* § 94.55(2)(a) (2017-18).  The legislature directed the DATCP to promulgate rules regulating hemp cultivation, processing, and sale "in a manner that allows the people of this state to have the greatest possible opportunity to engage in those activities."  Sec. 94.55(2)(b)2. (2017-18).

¶6 With WIS. STAT. § 94.55's enactment, the legislature also made changes to Wisconsin's controlled substances law. *See* 2017 Wis. Act 100, §§ 7-13. Among these changes, it enacted WIS. STAT. § 961.32(3), which shielded persons "acting in accordance with rules promulgated by the [DATCP]" from prosecution under WIS. STAT. ch. 961 for certain hemp-related activities, including (1) "[p]lanting, growing, cultivating, harvesting, processing, or transporting hemp that contains a [THC] concentration … of not more than 0.7 percent above the permissible limit for industrial hemp on a dry weight basis"; and (2) "[p]ossessing hemp with a [THC] concentration above the permissible level … if the hemp was certified under [§] 94.55(2)(c) at the time the possessor took possession as meeting the permissible concentration limit for industrial hemp and the possessor had no reason to believe at that time that the certification was incorrect." Sec. 961.32(3)(b)1., 4. (2017-18). The newly enacted statute also prohibited certain hemp-related prosecutions absent a referral by the DATCP:

> A person who plants, grows, cultivates, harvests, samples, tests, processes, transports, transfers, takes possession of, sells, imports, or exports industrial hemp in violation of a rule promulgated under [§] 94.55(2)(b) may not be prosecuted under [§] 94.55 or this chapter unless the person is referred to the district attorney for the county in which the violation occurred by the department of agriculture, trade and consumer protection.

Sec. 961.32(3)(c) (2017-18).

¶7 By emergency rule adopted in February 2018, the DATCP promulgated WIS. ADMIN. CODE § ATCP ch. 22 to implement the pilot program established under WIS. STAT. § 94.55 (2017-18). *See* Emergency Rule EmR1807, https://docs.legis.wisconsin.gov/code/register/2018/747a1/register/emr/emr1807_rule_text/emr1807_rule_text (last visited Oct. 21, 2025). These rules created two types of licenses that would be available to pilot program participants: (1) grower

5

licenses and (2) processor licenses. EmR1807, WIS. ADMIN. CODE § ATCP 22.02(10), (15).

¶8 In 2018, Congress passed legislation removing hemp from the federal list of controlled substances and directing the United States Department of Agriculture (USDA) to establish a permanent hemp program. LECLOUX at 7-8. The legislation also gave states the option of establishing their own permanent programs. *Id.* at 8.

¶9 The following year, the USDA released an interim final rule establishing a federal plan for the regulation of hemp production and outlining requirements that state plans would need to incorporate to receive USDA approval. *See* Establishment of a Domestic Hemp Production Program, 84 Fed. Reg. 58522, 58522 (Oct. 31, 2019) (to be codified at 7 C.F.R. pt. 990). Among other things, the interim final rule required hemp producers to be licensed by a state with its own plan or by the USDA in areas not covered by an approved plan. *Id.* at 58527. It also required state plans to "include[] procedures to identify and attempt to correct certain negligent acts," including "producing plants exceeding the acceptable hemp THC level." *Id.* at 58526. The interim rule recognized that "hemp producers may take the necessary steps and precautions to produce hemp, … yet still produce plants that exceed the acceptable hemp THC level." *Id.* (Such plants are referred to as "hot" hemp.) The rule therefore specified "that hemp producers do not commit a negligent violation if they produce plants that exceed the acceptable hemp THC level and use reasonable efforts to grow hemp and the plant does not have a THC concentration of more than 0.5 percent on a dry weight basis." *Id.*

¶10    In response to the interim final rule, the Wisconsin legislature revised WIS. STAT. § 94.55. *See* 2019 Wis. Act 68, §§ 13-38. Among other things, the legislature created paragraph (2)(am), which requires the DATCP to issue licenses to hemp producers if they are required to be licensed under federal law and if Wisconsin's hemp program received federal approval. 2019 Wis. Act 68, § 17 (creating § 94.55(2)(am) (2019-20)). Paragraph (2)(am) also provides that "[l]icenses from the department may authorize the planting, growing, cultivating, harvesting, producing, sampling, testing, processing, transporting, transferring, taking possession, selling, importing, and exporting of hemp." Sec. 94.55(2)(am) (2019-20). A person authorized to engage in these activities generally is not subject to prosecution for engaging in the activities with cannabis having a THC concentration of up to one percent. *See* WIS. STAT. § 961.32(3)(b) (2019-20).

¶11    The legislature also created subsection (2g), which addresses negligent violations of WIS. STAT. § 94.55 or rules promulgated thereunder by hemp producers. 2019 Wis. Act 68, § 29 (creating § 94.55(2g) (2019-20)). Subsection (2g) requires a producer who "negligently violate[s] this section or rules promulgated under this section," including by producing cannabis with a THC level in excess of the legal limit, to "comply with a plan established by the department to correct the negligent violation." Sec. 94.55(2g)(a)-(b) (2019-20).

¶12    In addition to the changes to WIS. STAT. § 94.55, the 2019 legislation made certain changes to Wisconsin's controlled substances law. *See* 2019 Wis. Act 68, §§ 60-82. As relevant here, the legislation revised WIS. STAT. § 961.32(3)(c) to read in relevant part as follows:

> A person who violates [§] 94.55 or a rule promulgated
> under [§] 94.55 may not be prosecuted under [§] 94.55 or

> this chapter unless the person is referred to the district attorney for the county in which the violation occurred or to the department of justice by the department of agriculture, trade and consumer protection[.]

*See* 2019 Wis. Act 68, § 74. The legislature also created § 961.32(3)(cm), which exempts from prosecution under § 94.55 or WIS. STAT. ch. 961 "[a] hemp producer that negligently violates [§] 94.55 or a rule promulgated under" that statute. 2019 Wis. Act 68, § 75.[3]

¶13 Following the changes to WIS. STAT. § 94.55, the DATCP issued Emergency Rule 2039, which repealed and replaced WIS. ADMIN. CODE § ATCP ch. 22 and converted Wisconsin's pilot program into a permanent program. *See* Emergency Rule EmR2039, https://docs.legis.wisconsin.gov/code/register/2020/779a1/register/emr/emr2039_rule_text/emr2039_rule_text (last visited Oct. 21, 2025). The new rules continued to authorize the DATCP to issue grower licenses and processor licenses. EmR2039, WIS. ADMIN. CODE § ATCP 22.02(9), (17). A grower license "allows a person to plant, possess, cultivate, grow, and harvest industrial hemp," whereas a processor license "allows a person to store, handle, and convert hemp into a marketable form." *Id.* at WIS. ADMIN. CODE § ATCP 22.03(1) (grower license), (3) (processor license).

¶14 In 2021, the USDA issued a final rule related to hemp production, which superseded the interim rule it had promulgated in 2019. *See* Establishment of a Domestic Hemp Production Program, 86 Fed. Reg. 5596, 5596 (Jan. 19, 2021) (codified at 7 C.F.R. pt. 990). Regulations established under the final rule

---

[3] WISCONSIN STAT. §§ 94.55 and 961.32 have not been altered or amended by the legislature since 2019 Wis. Act 68.

8

increased the THC concentration in cannabis that would result in a negligent violation from 0.5 percent to 1 percent. *Id.* at 5605; *see also* 7 C.F.R. §§ 990.6(b)(3), 990.29(a)(3). The regulations also allow for the remediation of cannabis plants that exceed the permissible THC level. 7 C.F.R. §§ 990.3(a)(6), 990.27(b). Like the interim final rule, the regulations promulgated under the final rule apply only to hemp producers—that is, those who "grow hemp plants for market, or for cultivation for market, in the United States." *See* 7 C.F.R. § 990.1 (defining term "[p]roduce"); *see also* Establishment of a Domestic Hemp Production Program, 86 Fed. Reg. at 5649 ("The [interim final rule] and this final rule do not cover hemp or its products beyond production. … [T]his final rule does not address 'in-process materials,' processors, end-products, processing of CBD or other cannabinoids or anything that may contain hemp or hemp byproducts.").

¶15 Following the USDA's issuance of the final rule, the DATCP issued an emergency rule that repealed and recreated WIS. ADMIN. CODE § ATCP ch. 22. *See* Emergency Rule EmR2111, https://docs.legis.wisconsin.gov/code/register/2021/785a1/register/emr/emr2111_rule_text/emr2111_rule_text (last visited Oct. 21, 2025). In its analysis accompanying the emergency rule, the DATCP wrote that the emergency rule "incorporates parts of the [f]inal [r]ule to give growers the greatest opportunity to produce hemp." *Id.* Specifically, the DATCP noted that the final rule "gives licensed growers the option to remediate, resample, and retest non-compliant hemp." *Id.* It described the option to remediate as "a new addition to the hemp

program [that] was incorporated to give growers a greater chance of having a compliant and marketable crop."[4] *Id.*

## II. Allegations and Charges Against Syrrakos and Shattuck

¶16    At the times relevant to this appeal, Syrrakos owned and operated Superstar Buds, a retail store in Menomonee Falls that sold products containing THC.  In 2018, Syrrakos obtained a hemp processor license from the DATCP, which he maintained in good standing into 2021.  Syrrakos and Shattuck lived together at a residence in Menomonee Falls.

¶17    According to the complaint, law enforcement in Waukesha received information that the children of an individual who had received a sample of gummies containing THC at Superstar Buds in November 2020 had been hospitalized after ingesting them.  This report, and other information indicating that Superstar Buds may have been selling products containing more than the lawful concentration of THC, led Waukesha police to conduct a series of undercover purchases of products at the store in January, February, and March 2021.  The police also collected items from garbage left outside Syrrakos and Shattuck's residence, as well as from garbage Syrrakos had removed from Superstar Buds and placed in a nearby dumpster.  Items collected during the undercover buys and from the garbage were tested and found to have concentrations of THC in excess of the legal limit.

---

[4] In September 2021, the DATCP announced that Wisconsin's hemp program would transition to the USDA on January 1, 2022.  Press Release, Wisconsin Department of Agriculture, Trade and Consumer Protection, Wisconsin Hemp Program Transitioning to USDA in 2022 (Sept. 2, 2021), https://datcp.wi.gov/Documents2/20210902HempTransitionToUSDA.pdf.

¶18     At the end of March 2021, the police executed search warrants at Superstar Buds and Syrrakos and Shattuck's residence. At both locations, officers collected gummies, containers, and other items that subsequently tested positive for THC. In September 2021, the State charged Syrrakos with eleven violations of Wisconsin's controlled substances law. Counts 1-8, which pertained to Superstar Buds, consisted of (1) five counts of manufacturing or delivery of THC, contrary to WIS. STAT. § 961.41(1)(h)1.; (2) one count of possession of THC with intent to deliver, contrary to § 961.41(1m)(h)3.; (3) one count of possession of THC, contrary to § 961.41(3g)(e); and (4) one count of maintaining a drug trafficking place, contrary to WIS. STAT. § 961.42(1). Counts 9-11, which related to the residence Syrrakos shared with Shattuck, consisted of (1) one count of possession of THC; (2) one count of possession of THC with intent to deliver; and (3) one count of maintaining a drug trafficking place. The State also charged Shattuck with one count of maintaining a drug trafficking place related to the residence.

## III.  Procedural History

¶19     In June 2022, Syrrakos and Shattuck filed a motion to dismiss, arguing that the circuit court lacked subject matter jurisdiction over Counts 1-8 against Syrrakos related to Superstar Buds. Their argument rested on WIS. STAT. § 961.32(3)(c), which they claimed required a referral from the DATCP before any criminal charges under WIS. STAT. ch. 961 could be filed against them. The court[5] denied the motion after concluding that § 961.32(3)(c) only required a referral "for violations related to [WIS. STAT. §] 94.55." Because Counts 1-8

---

[5] The Honorable Jennifer R. Dorow presided at the motion hearing and entered the order denying the motion to dismiss.

alleged violations of WIS. STAT. §§ 961.41 and 961.42, not § 94.55, the court concluded that § 961.32(3)(c) did not apply.

¶20    Syrrakos and Shattuck filed a motion for reconsideration. After briefing on that motion was complete, the cases were reassigned to a different branch of the circuit court pursuant to a judicial rotation order. The newly assigned judge held a hearing and later issued a written decision granting the motion.[6] The court reviewed the evolution of hemp regulation, both at the federal level and in Wisconsin, which it noted had not been presented to the judge who denied Syrrakos and Shattuck's motion to dismiss. Based on that history, the court reached two conclusions that, in its view, warranted reconsideration of the dismissal order.

¶21    First, the circuit court concluded that the "negligent violation rules contained in [WIS. STAT. §] 94.55(2g) … apply fully to all forms of production regulated by the licenses which the [DATCP] is authorized to issue." Thus, Syrrakos was a "hemp producer" for the purpose of § 94.55(2g) even though he only held a license to "process" hemp. Second, the court rejected the State's contention that Syrrakos' activities were not governed by § 94.55 because the products underlying the charges against him had THC concentrations that placed them outside the statutory definition of "hemp." The court concluded that this argument could not be reconciled with the text of WIS. STAT. § 961.32(3)(c), which prohibits prosecutions "under [§] 94.55 or this chapter" absent a referral by the DATCP. In the court's view, §§ 94.55 and 961.32 reflected the legislature's

--------

[6] The Honorable William J. Domina issued the written decision granting the motion.

12

"inten[t] that a[] governmental agency chosen by the legislature act [as] a clearinghouse for individuals operating under licenses issued under [§] 94.55."

¶22    Because the State had not received a referral before charging Syrrakos, the circuit court concluded that it lacked competency to adjudicate the charges against him.[7]  Although the initial motion to dismiss pertained only to the counts against Syrrakos related to events and items at Superstar Buds, the court dismissed all of the charges against him.  It also dismissed the count against Shattuck "in the interest of justice," even though she had never received a hemp license, because in its view, "the relevant questions regarding potential liability related both to products held for sale or maintained as stock to hold for sale and to the processing of such products."

## DISCUSSION

¶23    Ordinarily, we review a circuit court's decision on a motion for reconsideration for an erroneous exercise of discretion.  *Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶14, 396 Wis. 2d 622, 957 N.W.2d 605.  However, where "a discretionary decision is based on the circuit court's resolution of questions of law, we review those legal rulings de novo."  *Lenticular Europe, LLC ex rel. Van Leeuwen v. Cunnally*, 2005 WI App 33, ¶9, 279 Wis. 2d 385, 693 N.W.2d 302.  Here, the court's decision on reconsideration

---

[7] Although Syrrakos and Shattuck argued that the circuit court lacked subject matter jurisdiction, the court on reconsideration concluded it lacked competency over the charges against them.  Subject matter jurisdiction and competency are related but different concepts under Wisconsin law.  Subject matter jurisdiction refers to the power conferred on circuit courts by the Wisconsin Constitution "to decide certain types of actions."  *State v. Smith*, 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508.  Competency, in contrast, is "'the power of a court to exercise its subject matter jurisdiction' in a particular case."  *Id.* (quoting *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 337, 555 N.W.2d 640 (Ct. App. 1996)).

13

rested on its interpretation of WIS. STAT. §§ 94.55 and 961.32 and its conclusion that it lacked competency to adjudicate the charges against them. Competency and statutory interpretation are questions of law; accordingly, our review of those rulings is de novo. *See City of Eau Claire v. Booth*, 2016 WI 65, ¶6, 370 Wis. 2d 595, 882 N.W.2d 738; *Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656.

¶24 A circuit court's competency—its ability to proceed to judgment in a particular case—"may be affected by noncompliance with statutory requirements pertaining to the invocation of [the court's] jurisdiction." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶2, 273 Wis. 2d 76, 681 N.W.2d 190. "Whether a particular failure to comply with a statutory mandate implicates the circuit court's competency depends upon an evaluation of the effect of noncompliance on the court's power to proceed in the particular case before the court." *Id.*, ¶10. "Only when the failure to abide by a statutory mandate is 'central to the statutory scheme' of which it is a part will the circuit court's competency to proceed be implicated." *Id.* (quoting *State v. Bollig*, 222 Wis. 2d 558, 567-68, 587 N.W.2d 908 (Ct. App. 1998)).

¶25 Here, the circuit court concluded that it lacked competency over the cases against Syrrakos and Shattuck because the State commenced them without first receiving a referral from the DATCP. As noted above, WIS. STAT. § 961.32(3)(c) prohibits "[a] person who violates [WIS. STAT. §] 94.55 or a rule promulgated under [§] 94.55" from being prosecuted under § 94.55 or WIS. STAT. ch. 961 unless the DATCP refers the person to the relevant prosecuting authority. We will assume for the purpose of this opinion that § 961.32(3)(c) is central to Wisconsin's statutory scheme for regulating hemp. The question, then, is whether a referral was required. The answer to that question turns on whether Syrrakos

14

and Shattuck are "person[s] who violate[d] [§] 94.55 or a rule promulgated [there]under." *See* § 961.32(3)(c).

¶26 The State says they are not because it did not charge them with violating WIS. STAT. § 94.55 or any rules promulgated under it. It explains that the charges against Syrrakos and Shattuck are not for the production of "hot" hemp or other violations of the hemp statute, but rather for Syrrakos' allegedly intentional possession, manufacture, and delivery of products containing levels of THC far in excess of the legal limit and his and Shattuck's alleged maintenance of drug trafficking places.

¶27 Syrrakos and Shattuck disagree, arguing that WIS. STAT. § 961.32(3)(c)'s referral requirement applies to Syrrakos because, as a licensed processor of hemp, he must comply with Wisconsin's laws and administrative rules regarding hemp. *See, e.g.*, EmR2111, WIS. ADMIN. CODE § ATCP 22.15 (requiring hemp licensees to "comply with all applicable federal, state, and local laws"). They contend that these laws and rules prohibit Syrrakos from "having any product above the legal limit" and require any such products to be destroyed or remediated. *See* EmR2111, WIS. ADMIN. CODE §§ ATCP 22.10(3), (6), 22.12. Syrrakos and Shattuck argue that Syrrakos violated these rules by allegedly possessing and distributing products with a THC concentration in excess of 0.3%. Thus, a referral was required before he could be charged.

¶28 Initially, we agree with the State that it has not charged Syrrakos and Shattuck with violating WIS. STAT. § 94.55 or any rule promulgated under that statute. Section 94.55 and WIS. ADMIN. CODE § ATCP ch. 22 regulate certain activities related to hemp. The charges against Syrrakos and Shattuck do not arise out of their manufacture, possession, or sale of hemp. They relate, instead, to

15

items with THC concentrations far in excess of the level that would make them hemp under Wisconsin law. *See* § 94.55(1). For example, the complaint alleges that undercover officers purchased vape cartridges from Superstar Buds with THC concentrations of 29.53%, 33.44%, and 40.32% and "moonrocks" with THC concentrations of 7.11%, 2.93%, and 2.01%. These items, as alleged in the complaint, are not "hemp" as defined under § 94.55(1); they are controlled substances under WIS. STAT. § 961.14(4)(t).

¶29     We also reject Syrrakos and Shattuck's argument that the complaint describes conduct that "violates [WIS. STAT. §] 94.55 or a rule promulgated [there]under." *See* WIS. STAT. § 961.32(3)(c). Syrrakos and Shattuck do not argue that Syrrakos' alleged conduct violated § 94.55. Instead, they contend that Syrrakos' alleged conduct violated several rules promulgated under the statute, specifically EmR2111, WIS. ADMIN. CODE §§ ATCP 22.10(3), (6) and 22.12. As we explain below, these rules do not apply to persons, like Syrrakos and Shattuck, who are not licensed to grow hemp.

¶30     EmR2111, WIS. ADMIN. CODE § ATCP 22.10 governs the testing of plant samples for THC levels. The department must obtain samples from each "lot" of hemp and test their level of THC. EmR2111, WIS. ADMIN. CODE § ATCP 22.09(1). (A lot is "a contiguous area in a field, greenhouse, facility, or growing structure containing the same variety or strain of hemp throughout the area." EmR2111, WIS. ADMIN. CODE § ATCP 22.02(18).) Section ATCP 22.10 requires that a sample be tested using DATCP-approved methods and that "[a] written laboratory analysis of each test shall be provided to the licensed grower by the department." EmR2111, § ATCP 22.10(2). If the test reveals a THC concentration in excess of 0.3%, the DATCP "shall promptly order the licensee to destroy the entire lot" from which the sample was obtained unless the licensee

seeks to have the lot retested, resampled, or remediated. EmR2111, § ATCP 22.10(3). Remediation, which is governed by EmR2111, § ATCP 22.10(6), is "the process of a licensed grower rendering an entire lot of non-compliant cannabis, compliant by removing and destroying … flower material, while retaining stalk, stems, leaf material, and seeds or by shredding or grinding the plant material into a homogenous biomass." EmR2111, § ATCP 22.02(23). EmR2111, WIS. ADMIN. CODE § ATCP 22.12 governs the destruction of hemp plants.

¶31 As the text of these rules makes clear, sampling, testing, destruction, and remediation are activities that pertain to hemp plants that are grown in lots. Only a person to whom the DATCP issues a grower license is authorized to grow hemp. EmR2111, WIS. ADMIN. CODE § ATCP 22.03(1)(a). Thus, the obligation to destroy lots from which samples with unlawfully high THC levels are taken applies only to licensed growers of hemp. Likewise, the option to request remediation of such lots can only be exercised by licensed growers. This conclusion is reinforced by the DATCP's analysis accompanying EmR2111, which repeatedly links remediation to hemp growers:

> The [USDA f]inal [r]ule, or 7 C.F.R. 990, gives *licensed growers* the option to remediate, resample, and retest non-compliant hemp. As defined in this rule, remediation is the process of a *licensed grower* rendering part of the cannabis crop unusable by destroying the flower material. A large portion of the delta-9 THC found in cannabis plants is stored within the plant's floral material; by allowing *growers* to destroy this part of the cannabis plant, they are more likely to have a compliant crop. A second permitted form of remediation is for the *grower* to shred or grind the entire lot into a homogeneous biomass. *Growers* may only remediate after their hemp has been tested and is found to be non-compliant by the Department. … The option of remediation is a new addition to the hemp program and was incorporated to give *growers* a greater chance of having a compliant and marketable crop.

17

EmR2111 (emphases added).

¶32    It is undisputed that Syrrakos held only a processor license.  That license allowed him to "store, handle, and convert hemp into a marketable form." *See* EmR2111, Wis. Admin. Code § ATCP 22.03(3)(a).  It did not allow him to grow hemp.  And Shattuck did not hold any licenses related to hemp.  Thus, their conduct as described in the complaint did not violate EmR2111, Wis. Admin. Code §§ ATCP 22.10(3), (6) and 22.12.

¶33    Finally, Syrrakos and Shattuck suggest that allowing these prosecutions to go forward without a DATCP referral undermines the purpose of Wisconsin's regulatory framework for hemp, which in their view exists "to protect individuals operating in the hemp industry from criminal prosecutions for hot hemp."  We agree that this is one purpose served by our state's statutes and rules governing hemp.  But allowing the cases against them to proceed does not frustrate or undermine that purpose because, as noted above, they have not been charged with any offenses related to hot hemp.  Syrrakos has been charged with the possession, manufacture, and delivery of items containing unlawfully high concentrations of THC, and he and Shattuck have been charged with maintaining drug trafficking places.  We do not undermine our state's interest in protecting those who produce hot hemp from unwarranted criminal prosecution by allowing these charges to be adjudicated without a DATCP referral.

## CONCLUSION

¶34    Wisconsin Stat. § 961.32(3)(c) prohibits "[a] person who violates [Wis. Stat. §] 94.55 or a rule promulgated under [§] 94.55" from being prosecuted under Wisconsin's controlled substances law, Wis. Stat. ch. 961, unless the person is referred to a prosecuting authority by the DATCP.  This

18

prohibition does not apply to the charges against Syrrakos and Shattuck because neither has been charged with violating § 94.55 or EmR2111, WIS. ADMIN. CODE § ATCP ch. 22, and they have not shown that the conduct alleged in the complaint violates the statute or those rules. Accordingly, the circuit court erred in concluding that the absence of a referral deprived it of competency over these cases. The court's order granting Syrrakos and Shattuck's reconsideration motion and dismissing the charges against them is reversed, and the causes are remanded for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and causes remanded for further proceedings.

Recommended for publication in the official reports.